**Hazel K. GAITHER, a/k/a Molinda Eng, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12276.**

District of Columbia Court of Appeals.

Submitted June 6, 1978.

Decided Sept. 12, 1978.

Henry Schoenfeld, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Timothy J. Reardon and Henry F. Schuelke, III, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee. William D. Pease, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before GALLAGHER and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

YEAGLEY, Associate Judge:

Appellant was convicted by a jury of murder in the second degree while armed (D.C.Code 1973, §§ 22–2403, –3202) and arson (D.C.Code 1973, § 22–401). The evidence introduced by the government at trial indicated that appellant had been living with the victim, Charles Lassiter. During the early morning hours of May 30, 1976, appellant stabbed Lassiter to death with an ice pick. When the multiple wounds to his body did not bleed, appellant set him afire with lighter fluid. At trial, appellant presented no evidence on her behalf. The sole question presented for review is whether the trial court erred in denying appellant's request to be examined by a private psychiatrist under D.C.Code 1977 Supp., § 11–2605(a).[1] We affirm in part and remand for further proceedings.

---

1. D.C.Code 1977 Supp., § 11–2605(a) provides:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court shall authorize counsel to obtain the services.

A warrant was issued for appellant's arrest on June 2, 1976. She was presented to the Superior Court on June 7, 1976, and a report was ordered from the Forensic Psychiatric Services. After a preliminary competency examination, a Forensic Psychiatric Services staff member recommended, on the basis of appellant's alternately tearful and hostile demeanor, a mental observation commitment to St. Elizabeths Hospital. On June 8, the court ordered such a commitment, pursuant to D.C.Code 1973, § 24–301(a),[2] for purposes of both competency and mental responsibility determinations.

By letter dated August 16, 1976, Dr. Roger Peele, Acting Superintendent of St. Elizabeths Hospital, informed the court that appellant had been examined, that the diagnosis was paranoid-type schizophrenia and habitual excessive drinking, that she was then incompetent to stand trial, but that efforts to arrive at a "productivity" determination were premature.

On September 7, 1976, the trial court found appellant incompetent to stand trial and ordered that she be returned to St. Elizabeths for treatment until such time as she was determined to be competent.

By letter dated December 27, 1976, Dr. Peele informed the court that appellant had been reexamined and was competent to stand trial. Dr. Peele further stated that on the date of the alleged offenses, she was not suffering from any mental disease or defect which substantially impaired her behavioral controls or which rendered her incapable of appreciating the wrongfulness of her conduct or conforming her conduct to the requirements of the law. The official

diagnosis of appellant remained, however, paranoid-type schizophrenia and habitual excessive drinking.

On January 11, 1977, the court found appellant competent to stand trial. She was arraigned and entered a plea of not guilty. Counsel for the appellant then advised the court that the defense would be insanity, and requested that appellant be sent back to St. Elizabeths for further study. Counsel stated that he had been informed by the staff psychiatrist who had examined appellant that she had not revealed enough facts about the case to allow him to fully determine whether the alleged offense had been the product of a substantial mental disease or defect. In the alternative, counsel requested that a private psychiatrist be appointed to assist appellant in the development of her insanity defense. Counsel informed the court that in his view, appellant appeared to be "the most insane of any person I have ever dealt with in my life."

The court initially denied appellant's request that she be further examined at St. Elizabeths on the grounds that nothing in the record led the court to doubt the correctness of the findings contained in the hospital's report. The court did, however, authorize defense counsel to expend a "modest sum," not to exceed $100, for a preliminary examination by a private psychiatrist. Later in the hearing, the court reconsidered its ruling and ordered that appellant be returned to St. Elizabeths for further examination.

By letter dated January 21, 1977, Dr. Peele informed the court that the staff

---

This provision is identical to 18 U.S.C. § 3006A(e)(1) (1970), which provides for defense related services in the federal district courts. We therefore interpret § 11–2605(a) in accordance with the cases involving its federal counterpart.

2. D.C.Code 1973, § 24–301(a) provides:

　　If it appears to a court having jurisdiction of—

　　(1) a person arrested or indicted for, or charged by information with, an offense,

.　.　.　.　.

that, from the court's own observations or from prima facie evidence submitted to it

.　.　. such person or child (hereafter in this subsection and subsection (b) referred to as the "accused") is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital.

psychiatrist who had originally examined appellant had conducted a further examination, and that the staff remained of the opinion that appellant was legally sane on the date of the alleged offense.

On February 25, 1977, defense counsel submitted ex parte a voucher form [3] seeking the appointment of one Dr. Harold Kaufman, psychiatrist, for the purpose of a preliminary examination to determine whether an insanity defense might lie, estimating expenses at $500 for such an examination and an additional $500 to underwrite trial testimony should that prove necessary. The court denied the application on February 28, 1977, without a hearing.

■ At trial, appellant again requested that a private psychiatrist be appointed to assist in the development and presentation of an insanity defense. Defense counsel provided the court with an August 1975 hospital report which diagnosed appellant as paranoid. The court denied the request on the grounds that "the evidence so far has indicated that there was not such a substantial mental disease or defect which substantially impaired her capacity to understand the wrongfulness of her conduct, or to conform that conduct to the requirements of law at the time and with respect to the matter in question in this case." The trial judge informed appellant that his ruling did not preclude her from developing an insanity defense with any funds she might have available. He felt, however, that appellant had not made a sufficient showing to justify the expenditure of public funds for that purpose. Government counsel was present during the colloquy between the court and defense counsel but did not participate in the proceeding.[4]

■ Under § 11–2605(a), a defendant is entitled to the services of an expert upon a showing that (1) the accused is financially unable to obtain the service, and (2) the service is "necessary to an adequate defense." *Williams v. United States,* D.C. App., 310 A.2d 244 (1973). It is clear that psychiatric assistance in preparing an insanity defense comes within the statute. *United States v. Schappel,* 144 U.S.App.D.C. 240, 243 n. 7, 445 F.2d 716, 719 n. 7 (1971); *United States v. Taylor,* 437 F.2d 371, 377 (4th Cir. 1971). There is no dispute in this case that appellant was financially unable to obtain the requested service. Hence, our inquiry need focus only on whether the assistance of a psychiatrist was "necessary to an adequate defense."

■ In determining whether the services of a psychiatric expert are "necessary to an adequate defense," the question before the trial court is not whether the defendant was insane at the time he committed the offense, but whether the evidence of mental disorder is such that a reasonable attorney would pursue an insanity defense. *See United States v. Taylor, supra* at 377; *United States v. Hamlet,* 480 F.2d 556 (8th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 452, 38 L.Ed.2d 317 (1973).

3. Under § 11–2605(a), a request for defense related services should be by ex parte application. Although the statute does not require that the application be accompanied by a supporting memorandum, defense counsel should state in the application or a memorandum the facts giving rise to the defendant's need for a particular defense service. This will afford the trial court an opportunity to weed out frivolous requests without the need for a hearing.

In this case, defense counsel did not include a statement of facts in his application. Defense counsel had, however, already informed the court of the facts giving rise to his request for private psychiatric assistance at the January 11, 1977 hearing.

4. Section 11–2605(a) requires that eligibility and need for a defense service be determined in an ex parte proceeding. This requirement affords the defendant an opportunity to present his request to the trial court without prematurely disclosing the merits of his defense to the prosecution. In this case, the prosecutor was present during the hearing on appellant's request to be examined by a private psychiatrist. This was error. *United States v. Sutton,* 464 F.2d 552 (5th Cir. 1972); *Marshall v. United States,* 423 F.2d 1315, 1318 (10th Cir. 1970). Appellant did not, however, object to the presence of government counsel. In view of our holding that the trial court erroneously denied appellant's request that a private examination be ordered, we need not decide whether the failure to accord appellant an ex parte hearing constituted reversible error.

While a trial court need not authorize an expenditure under subdivision [(a)] for a mere "fishing expidition," it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge. Considering the purpose of [§ 11–2605(a)] to provide the accused with a fair opportunity to prepare and present his case, the application of the accused's counsel for such services must be evaluated on a standard of reasonableness. [*Williams v. United States, supra* at 246, quoting *United States v. Schultz,* 431 F.2d 907, 911 (8th Cir. 1970).]

In making this determination, the trial court should tend to rely on the judgment of defense counsel who has the primary duty of providing an adequate defense. *Brinkley v. United States,* 498 F.2d 505, 510 (8th Cir. 1974); *United States v. Theriault,* 440 F.2d 713, 717 (5th Cir. 1971) (Wisdom, J., concurring), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973).

 Of course, under § 11–2605(a), a defendant does not always have the right to a psychiatrist. *United States v. Chavis,* 155 U.S.App.D.C. 190, 195, 476 F.2d 1137, 1142 (1973). A court need not appoint a psychiatrist if there is absolutely no reason to think that a plea of insanity would be successful. *See United States v. Hamlet, supra.* In determining whether psychiatric assistance is necessary, the trial court should consider the defendant's prior psychological history, any reports concerning his mental state, the opinion of those who have had an opportunity to view him, the record and the judge's own evaluation of defendant's demeanor. *United States v. Hamlet, supra; United States v. Chavis, supra* at 196, 476 F.2d at 1143. And, the court may deny a request under § 11–2605(a) if the defendant has received sufficient psychiatric assistance from other sources to develop an adequate defense. *United States v. Chavis, supra* at 196–97, 476 F.2d at 1143.[5]

In this case, the government contends that in light of the repeated examinations of appellant by St. Elizabeths' staff psychiatrists, the appointment of a private psychiatrist was not "necessary to an adequate defense." On the record before us, we cannot agree.

 The purpose of a § 11–2605(a) psychiatric expert is to assist defense counsel in determining whether there is a basis for a substantial defense of sanity, and in preparing and presenting such a defense if, after examination, it appears justified. *See United States v. Taylor, supra* at 377. The statute goes beyond, and must be distinguished from, provisions such as D.C.Code 1973, § 24–301(a) which provides for a mental examination pursuant to an order of the court. A § 24–301(a) examination provides the court with the judgment of a neutral and detached expert as to either the competency of the defendant to stand trial or his sanity at the time the offense was committed. *United States v. Chavis, supra* at 194, 476 F.2d at 1141–42. While the opinion of an expert appointed pursuant to § 24–301(a) may be utilized by the defendant, the expert is not always available to advise and assist in the development of an insanity defense. When, however, an expert is appointed under § 11–2605(a), he is not primarily an aide to the court. To the contrary, the very purpose of his appointment is to provide "expert service 'necessary to an adequate defense.' He can be a partisan witness." *United States v. Bass,* 477 F.2d 723, 725–26 (9th Cir. 1973). And, unlike the § 24–301(a) expert, his conclusions and opinions need not be reported to either the court or the prosecution. *See United States v. Theriault, supra* at 715.[6] Hence, in this

5. Motions made under § 11–2605(a) should not be granted so routinely that the statute is transformed into a vehicle for delay.

6. A number of federal circuit courts have found that an examination by a court appointed psychiatrist or at a government facility does not preclude resort to 18 U.S.C. § 3006A(e) (1970), the federal defense services provision. *See, e. g., United States v. Reason,* 549 F.2d 309, 311 (4th Cir. 1977); *United States v. Bass, supra* at 725; *United States v. Chavis, supra* at 195, 476 F.2d at 1142; *United States v. Theriault, supra* at 715.

case, the fact that appellant had, on more than one occasion, been examined by staff psychiatrists at St. Elizabeths did not render an examination by a private psychiatrist unnecessary.

█ Moreover, in this case, the trial court did not base its denial of appellant's request on a finding that her defense needs had been satisfied by the examinations conducted at St. Elizabeths. Rather, the court found that there was not sufficient evidence of mental disorder to justify the appointment of a private psychiatrist. It is to that finding which we now turn the focus of our inquiry.

The record before the trial court indicated that appellant's psychological state had rendered her incompetent to stand trial for several months. The psychiatrists who examined appellant at St. Elizabeths repeatedly diagnosed her as a paranoid schizophrenic with a tendency toward excessive drinking. In August 1975, appellant had been diagnosed as paranoid. Defense counsel informed the court that appellant was the most insane person he had ever observed. And, the bizarre manner in which appellant murdered the man with whom she had been living suggests that the crime might have been the manifestation of a deranged mind. We conclude that the evidence of mental disorder reasonably supported the request that a private psychiatrist be appointed to assist appellant and her attorney in determining whether there existed a proper basis for an insanity defense and in developing such a defense, if it appeared justified.

This, of course, is not to say that the trial court should not have considered the opinion of the St. Elizabeths psychiatrists in determining whether a private psychiatrist should be appointed. In many cases, the

opinion of a neutral expert may justify the denial of a request for psychiatric assistance under § 11–2605(a). *See Hamlet v. United States, supra.* The opinions of St. Elizabeths experts are, however, but one factor to be considered in determining whether the evidence of mental disorder reasonably supports defense counsel's decision to pursue a defense of insanity. We note that in this case, the report from St. Elizabeths merely stated, in the familiar phrases of the applicable legal standard, that appellant was not insane at the time she committed the offense. The report did not focus on the question whether there was sufficient evidence of mental disorder to justify further examination, or the development and presentation of an insanity defense. On the record before us, we find that the evidence of mental disorder was such that the trial court abused its discretion in denying appellant's request that she be examined by a private psychiatrist.

Having determined that the trial court erred in refusing to appoint a § 11–2605(a) psychiatric expert, we conclude that the appropriate remedy is to remand the case to the trial court with directions to appoint a reputable private psychiatrist under § 11–2605(a).[7] After examining appellant, the psychiatrist should provide a report of his conclusions to the court and defense counsel, but not to the prosecution. If the report indicates the existence of the availability of an insanity defense, and defense counsel concludes that there is a reasonable basis for pursuing an insanity defense at trial and informs the court of his intention to rely on such a defense, a new trial should be ordered solely on the question of whether appellant was insane at the time she committed the acts underlying the charges against her.[8]

7. In his application for private psychiatric assistance, appellant requested that the court approve expenditures of $500 for examination and $500 to underwrite trial testimony should that prove necessary. Under § 11–2606(c), a defense expert is not entitled to compensation—exclusive of reimbursement for expenses reasonably incurred—in excess of $300 unless the trial court has certified that the service is of

unusual character or duration. Hence, unless defense counsel can show in his application some justification for payments in excess of $300, the trial court should limit compensation to that amount.

8. It is possible, on the other hand, that despite the evidence of appellant's mental difficulties, the results of the examination by a private psychiatrist may not provide defense counsel

Because the government has already established beyond a reasonable doubt appellant's factual culpability on these charges, and because the trial court's error in this case does not contaminate the jury's finding on this factual issue, it is unnecessary to retry appellant on other than the insanity question.[9] This case will thus on remand assume the character of any other insanity case, in which the jury has decided that the government has proved beyond a reasonable doubt the elements of the offenses charged and then proceeds to decide the separate question of whether the defendant's mental condition warrants holding him criminally responsible for his acts. The jury's disposition of the former remains undisturbed by our holding, and appellant's conviction will stand unless the court appointed private psychiatrist provides defense counsel with a reasonable basis to pursue an insanity defense, and a jury subsequently determines that appellant was insane at the time she committed the acts in question.

*Affirmed in part and remanded for proceedings not inconsistent with this opinion.*

with any meaningful assistance in preparing an insanity defense. In fact, a thorough examination may lead defense counsel to conclude that there is no basis for such a defense. In such a case, the trial court's error would be harmless. *United States v. Reason,* 549 F.2d 309, 312 (4th Cir. 1977); *Brinkley v. United States, supra* at 511.

9. *Cf. Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (remand for new trial only on the question of punishment upheld).