Alonzo M. DOBSON, Appellant,

v.

UNITED STATES, Appellee.

No. 13214.

District of Columbia Court of Appeals.

Argued Nov. 15, 1978.

Decided Jan. 30, 1981.

Robert L. Deichmeister, Alexandria, Va., appointed by this court, for appellant.

Lillian A. McEwen, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Peter E. George, Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee. Carl S. Rauh, then U. S. Atty., and Paul L. Knight, Asst. U. S. Atty., Washington, D. C., entered appearances for appellee.

Before NEWMAN, Chief Judge, HARRIS, Associate Judge, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

This is an appeal from convictions for felony murder,[1] second degree murder while armed,[2] second degree murder,[3] attempted robbery while armed,[4] attempted robbery,[5] and carrying a pistol without a license.[6] We hold that the trial court erred in denying appellant's pretrial motion for the appointment of a private psychiatric expert to assist in the preparation of an insanity defense. However, we reject appellant's oth-

er allegations of error concerning the conduct of the trial. Therefore, consistent with our holding in *Gaither v. United States*, D.C.App., 391 A.2d 1364 (1978), we affirm in part but remand appellant's case with directions to the trial court to appoint a psychiatric expert, under D.C.Code 1978 Supp., § 11–2605(a). If the expert concludes that a reasonable basis for an insanity defense exists, and if appellant's counsel wishes to pursue such a defense, the trial court shall then order a new trial limited solely to the question of appellant's mental state at the time the offenses were committed. If, on the other hand, defense counsel, based on the expert's evaluation, concludes that an insanity defense is unwarranted, appellant's convictions and sentences will stand affirmed.[7]

## FACTS

At approximately 3:30 p. m. on September 23, 1976, William Bacon was shot and killed in front of an apartment building located at 800 Bellevue Street, Southeast. Alonzo M. Dobson, the appellant, and Kenneth A. Minor were arrested and indicted for the murder and other lesser offenses. At the trial by jury, held on September 14–16, 1977, the prosecution called several witnesses, including six men who viewed events at the scene of the crime. Although none of the witnesses saw the actual shooting, their accounts of the periods immediately preceding and immediately following the shooting implicated appellant and Minor circumstantially in the crime's commission. The testimony of these witnesses in essence was that a short time before the shooting occurred, appellant and Minor were seen walking together in the vicinity of the apartment building where the murder took place. Approximately ten minutes later a loud, firecracker-like noise came from the direction of the building. Minor was seen

1. D.C.Code 1973, § 22–2401.
2. D.C.Code 1973, §§ 22–2403, –3202.
3. D.C.Code 1973, § 22–2403.
4. D.C.Code 1973, §§ 22–2902, –3202.
5. D.C.Code 1973, § 22–2902.
6. D.C.Code 1973, § 22–3203.
7. *See* note 8 and accompanying text, *infra*.

running from the building, followed by the victim who, after staggering from the building, leaned against a car parked in front of the apartment and then fell to the pavement. Witnesses then saw appellant emerge from the building, lean over the victim and go through the victim's pockets. When an acquaintance of appellant, who came forward to aid the victim, told appellant to "leave him [Bacon] alone," appellant ran off. A short time thereafter, appellant and Minor spoke with a mutual friend, Layman Lewis. Minor told Lewis that he and appellant "had just killed a man down the hill." Appellant added that "[t]he white mother fucker tried to buck," and that he shot him. Lewis noticed that appellant was carrying a small, black pistol.

At the close of the government's evidence, appellant and his codefendant moved for judgments of acquittal which were denied. Each defendant then rested his case without presenting evidence, and the jury returned verdicts of guilty. Appellant was sentenced to twenty years to life on the felony murder count, fifteen years to life on the attempted armed robbery count, and one year on the unlicensed possession of a weapon count, the sentences to run concurrently.[8] Appellant then brought this appeal.

### SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that there was insufficient evidence to sustain his conviction for felony murder or for the underlying attempted robbery while armed. He bases this argument on the fact that no witness saw the shooting, there was no evidence that anything was taken from the victim, and the evidence which tended to show that appellant had gone through the victim's pockets as the victim lay on the ground was only sufficient to establish that robbery, if perpetrated, was an afterthought. We do not find this argument compelling.

■ When considering claims of evidentiary insufficiency, we review all the evidence, whether direct or circumstantial, and we view it in a light most favorable to the appellee. We will sustain the conviction if the evidence reasonably permits a finding of guilt beyond a reasonable doubt. *Byrd v. United States*, D.C.App., 388 A.2d 1225, 1229 (1978).

In applying this standard of review in the instant case, we note that the evidence against appellant is overwhelming. Several witnesses observed appellant and his codefendant in the immediate vicinity of the building where the shooting took place before and after it occurred. Upon hearing a shot, a witness saw the victim, the codefendant, and the appellant emerge from the building. Appellant was seen searching the victim's pockets, and was seen carrying a gun. Moreover, a witness testified that he heard appellant and his codefendant state that they "had just killed a man" after he had "tried to buck." This evidence is clearly sufficient under the guidelines of *Byrd, supra*, for a reasonable juror to conclude beyond a reasonable doubt that appellant attempted to rob Bacon, that appellant shot Bacon when he tried to resist, and that appellant's actions in going through Bacon's pockets were efforts to complete the robbery.

### ABUSES OF DISCRETION

Appellant also contends that the trial court abused its discretion in refusing to allow cross-examination of the government's medical expert with respect to certain matters; in permitting the government to lead its own witnesses; and, in not giving, sua sponte, a cautionary instruction to the jury on the limited use of prior inconsistent statements after the government used such a statement, allegedly, to impeach its own witness. We address each of these contentions seriatim.

8. Imposition of sentence as to the lesser-included offenses was suspended, pending the outcome of this appeal. Because we affirm the three convictions upon which appellant was sentenced, the trial court is directed to vacate the convictions for the lesser-included offenses,

*viz.*, second-degree murder while armed, second-degree murder and attempted robbery. *See Ellis v. United States*, D.C.App., 395 A.2d 404, 413 (1978) (convictions on lesser-included offenses should have been set aside prior to appellate consideration).

## a. *Recross-examination.*

The scope of the right to cross-examination and the standards by which a trial court's refusal to grant recross-examination are to be governed were recently explicated by this court in *Singletary v. United States*, D.C.App., 383 A.2d 1064 (1978). In *Singletary*, we said:

> [O]nce a party has had an opportunity substantially to exercise the right of cross-examination, the extent of further interrogation is within the sound discretion of the trial court, and reversal by an appeals court is warranted only where an abuse of discretion leads to prejudice. There is, moreover, generally no constitutional right to recross-examine a witness, since the scope of the redirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding on redirect. Consequently, the extent of recross-examination is discretionary and may be strictly limited by the trial court. In the rare case in which material new matters are brought out on redirect examination, however, the confrontation clause of the Sixth Amendment mandates that the opposing party must be given the right of recross-examination on the new issues—although the privilege of recross-examination as to matters *not* covered on redirect examination remains within the discretion of the trial court. [383 A.2d at 1073 (citations omitted; emphasis in original).]

■ The question here is one of fact. Our review of the record leads us to conclude that no new matter was brought out on cross-examination. In fact, it is clear from the record that the new matters which, appellant alleges, were elicited during the government's redirect examination of the expert were actually developed for the first time by appellant during cross-examination. Therefore, under *Singletary, supra,* we hold that the trial court did not abuse its discretion in curtailing recross-examination.

## b. *The Government's Use of Leading Questions with Its Own Witnesses.*

■ Appellant objects to several instances where the government was allowed to use leading questions. While no effort was made by either the court or the prosecutor to give reasons why the leading questions were necessary, our examination of the record reveals that none of the witnesses' crucial testimony was elicited by means of leading questions. We find no abuse of discretion. *Green v. United States*, 121 U.S.App.D.C. 111, 112, 348 F.2d 340, 341, *cert. denied*, 382 U.S. 930, 86 S.Ct. 321, 15 L.Ed.2d 342 (1965).

## c. *Government Impeachment of Its Own Witness.*

■ Appellant contends that during the redirect examination of witness Witherspoon, the prosecution was erroneously permitted to impeach its own witness, over his objection, without a showing of surprise and without a cautionary instruction being given. On cross-examination, the witness had said that he had been unable to identify two suspects from photographs shown him by the police. On redirect, defense counsel objected to several questions concerning what the witness had stated earlier in this regard in a written statement to the police and was shown that portion of his statement which prompted him to change his testimony.

Appellant's counsel contends that this ran contrary to the provisions of D.C.Code 1973, § 14–102, which requires a showing of surprise and when the witness is impeached, a cautionary instruction must be given to the jury advising them that the prior inconsistent statement is to be considered only in assessing the witness' credibility and is not substantive evidence. *See Johnson v. United States*, D.C.App., 387 A.2d 1084 (1978) (en banc).[9]

---

9. In the *Johnson* case, the court en banc overturned a prior division majority opinion [387 A.2d 1084 (1978)] based upon *Lofty v. United States*, D.C.App., 277 A.2d 99 (1971), which had given support to the concept of a per se plain error rule compelling reversal if a cau-

However, the record reflects that the prosecutor merely was permitted to refresh the witness' recollection by showing him part of an earlier written statement he had made to police. The contents were not read to the jury nor was it introduced in evidence. We conclude that impeachment was not involved and a cautionary instruction would have served no purpose, as there was nothing to caution the jury about.

## DENIAL OF DEFENDANT'S MOTION FOR APPOINTMENT OF A PSYCHIATRIC EXPERT TO ASSIST IN THE PREPARATION OF AN INSANITY DEFENSE

At a March 25, 1977 pretrial status conference, the trial court ordered psychiatric screening for appellant to determine if appellant was competent to stand trial. A commitment was ordered in accordance with D.C.Code 1973, § 24–301(a).[10] That same day, a preliminary report was issued by a forensic psychiatrist working at the Department of Human Resources (DHR). The report, based on observations which disclosed that appellant was showing signs of depression and psychosis, expressed doubts as to appellant's competency to stand trial. The report recommended appellant be admitted for a complete pretrial mental examination. An order to that effect was issued by the court on April 6, 1977, and the case was continued. On May 12, the Chief of the Forensic Psychiatry Division of DHR wrote to the court that there was a "serious question" about appellant's competency to stand trial, and he requested that appellant remain hospital-

ized for an additional thirty days and be reevaluated at that time. The request was granted by the court and the status hearing was reset for June 21. On June 15, the staff psychiatrist in charge of appellant's evaluation reported to the court that it was his opinion that appellant was incompetent to stand trial due to appellant's "persistent paranoid thinking" and auditory hallucinations. Accordingly, at the next status hearing (held on June 22, rather than on June 21), the court found appellant incompetent to stand trial and ordered him recommitted to St. Elizabeths for further evaluation. A new trial date of September 14 was set, to be preceded by a September 7 hearing at which appellant's competency would be redetermined.

On July 27, DHR informed the court that appellant was then able to stand trial. In pertinent part, the letter from DHR read:

Dr. David L. Shapiro, staff psychologist, recently examined Mr. Dobson, and the following determinations were made at a medical staff conference. He is now competent for trial by virtue of having a rational as well as factual understanding of the proceeding pending against him and being able to consult with counsel with a reasonable degree of rational understanding. Furthermore, on or about September 23, 1976, the date of the alleged offenses, he was not suffering from a mental disease or defect which substantially impaired his behavioral controls, and the alleged offenses, if committed by him, were not the product of his mental disease or defect. Furthermore,

---

tionary instruction is not given in an impeachment situation. While we reaffirmed in *Johnson* (*see* note 5) "the validity of *Lofty's* narrower holding that a sua sponte cautioning instruction is required when a party, surprised by its own witness, impeaches the witness with a prior inconsistent statement . . .," we held "to the extent that it [*Lofty*] conferred on the trial court an absolute sua sponte obligation to issue an immediate cautioning instruction whenever evidence is brought in which is admissible only for a limited purpose, *Lofty* is overruled." *Johnson v. United States, supra* at 1087 (footnote omitted). We explained, *id.* at 1089, "[u]nder the plain error standard, the error

complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness of the trial." Such was the situation in *Lofty*, where the change in the witness's story went to the heart of appellant's guilt or innocence. The plain error standard of review is inapplicable here, however, since defense counsel did request—but was denied—a cautionary instruction.

10. D.C.Code 1973, § 24–301(a), provides a mechanism whereby the court can have an accused committed for observation in order to assist the court in determining whether the accused is competent to stand trial.

nor as a result of a mental disease or defect did he lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

He has been diagnosed as Antisocial Personality with Paranoid features and is currently receiving [medicine].

In the interim between the filing of this letter with the court and the status hearing to be held on September 7, counsel for appellant filed a motion with the court for appointment of a private psychiatrist to examine appellant, and for appropriation of funds to pay for the examination. In a written order dated September 7, 1977, the court denied appellant's request for expert psychiatric services. In addition to reciting the basis for DHR's finding of competence, the order stated:

> The request for expert psychiatric services, in the view of the Court is not merited. . . . Further psychiatric examination does not appear to be necessary to an adequate defense in this case.

\* \* \* \* \* \*

Defendant's history of mental problems is not of major proportions. The chief indication of mental illness in his record is the June 15, 1977, finding by St. Elizabeths Hospital that defendant was incompetent to stand trial at that time. However, after further examination, St. Elizabeth's found him to be competent less than two months later. The balance of defendant's history of mental problems consists of two voluntary hospitalizations, in 1970 and 1972. The diagnosis on both occasions was "Adjustment reaction of adolescence", and outpatient therapy was prescribed.

Appellant claims that this ruling was error because the recent evidence of mental aberration on appellant's part coupled with his prior history of emotional maladjustment was sufficient to require the grant of the motion. While the question is a close one in this case, we conclude that the trial court abused its discretion in denying the request.

Section 11–2605(a) of the D.C.Code states:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court shall authorize counsel to obtain the services.

Our application of this statute is controlled by our opinion in *Gaither v. United States, supra* at 1367 n.4, where we said:

> Section 11–2605(a) requires that eligibility and need for a defense service be determined in an ex parte proceeding. This requirement affords the defendant an opportunity to present his request to the trial court without prematurely disclosing the merits of his defense to the prosecution. . . . In view of our holding that the trial court erroneously denied appellant's request that a private examination be ordered, we need not decide whether the failure to accord appellant an ex parte hearing constituted reversible error.

■ The court must provide a defendant with expert services under D.C.Code 1978 Supp., § 11–2605(a), whenever there has been a showing that the accused is financially unable to obtain the service and the service is "necessary to an adequate defense." [11] *Gaither v. United States, supra; Williams v. United States,* D.C.App., 310 A.2d 244 (1973). There is no dispute that psychiatric services are covered by the statute, *Gaither v. United States, supra,* at 1367, or that in the instant case appellant was financially eligible for their provision. [12]

---

11. Section 11–2605(c) places a $300 limit on compensation for these services—exclusive of reimbursement for expenses reasonably incurred—unless the trial court certifies that the service is of unusual character or duration.

12. In its order denying appellant's motion for appointment of an independent psychiatrist, the court did approve payment for investigative services, for which there also had to be a demonstration of financial need.

**368**

Hence, the only issue is whether the services are "necessary to an adequate defense." In that regard, this case is governed by *Gaither*.

In *Gaither*, the trial court denied defendant's timely request for the appointment of an independent psychiatrist because it did not find sufficient evidence of mental disorder to justify the appointment. A similar finding is the basis for the court's denial in this case. We remanded the *Gaither* case to the trial court with directions to appoint a reputable private psychiatrist to examine the defendant and report to the court and defense counsel whether there is a reasonable basis for pursuing an insanity defense. The reason for our remand was our finding that there was sufficient evidence of mental disorder to support the request for appointment of a private psychiatrist.

■ At the outset of the *Gaither* opinion, we observed that in evaluating the request for appointment of a psychiatrist under § 11–2605(a) the court is not concerned with the ultimate question of whether or not the defendant was sane at the time of the offense, but rather "*whether the evidence of mental disorder is such that a reasonable attorney would pursue an insanity defense.*" *Gaither, supra* at 1367 (emphasis added). Accordingly, "the trial court should tend to rely on the judgment of defense counsel who has the primary duty of providing an adequate defense." *Id.* at 1368. However, as we noted in *Gaither*, the court should not act merely as a "rubber stamp" for defense counsel, but should consider other factors, including the defendant's prior psychological history, reports concerning defendant's mental state, opinions of those who have observed the defendant, and the trial court's own assessment of the defendant's demeanor. *Id.* When these factors, taken together, fail to establish a basis for a plea of insanity, the court properly may deny the motion.

■ We, therefore, must determine *whether or not* there was a sufficient evidentiary basis for the defense, such that appellant's motion should have been granted or such that the court should have held a

hearing. Admittedly, the record of mental disorder in this case is not as compelling as that which existed in *Gaither*. There, the accused had been unable to stand trial for several months due to her mental state. She had been consistently diagnosed as paranoid schizophrenic and an excessive drinker. She had murdered her victim, the man with whom she had been living, in a bizarre manner, and her defense counsel thought her the most insane person he had ever observed. Nevertheless, by remanding that case we did not mean to establish a standard whereby only an accused exhibiting the most extreme abnormal behavior would qualify for the appointment of a private psychiatrist. Where, as here, there is a financially eligible defendant who has been recently adjudged incompetent to stand trial by a qualified court-appointed psychiatric staff, who has a history—albeit limited—of psychiatric problems, and defense counsel in good faith asserts that there is a basis for an insanity defense and requests an independent, private psychiatrist, the court should hold a hearing on that request. Had the court held a hearing on the request in this case, a firmer basis for supporting its ruling might have been made to appear, but no hearing was held.

■ In addition to these considerations, a court may also deny a § 11–2605(a) request on the basis that the defendant already had received sufficient psychiatric assistance to prepare his defense. The provision for psychiatric examination under § 24–301(a) is not dispositive of this inquiry. The task of a § 24–301(a) expert essentially is to provide the court, in a neutral and detached manner, with an evaluation of the accused's competency to stand trial or of defendant's sanity at the time of the commission of the offense. In contrast, the § 11–2605(a) expert acts as a consultant to the defendant, not to the court. His main purpose is to help determine whether there is a reasonable basis for an insanity defense.

■ We hold that in this case, as in *Gaither*, examination of appellant by St. Elizabeth's staff psychiatrists, appointed by,

and required to report to, the court in accordance with § 24–301(a), was not provision of sufficient psychiatric assistance so as to obviate the need for the appointment of a private psychiatrist under § 11–2605(a).

 Since we find no error at trial other than the denial of appellant's motion for a court-appointed psychiatrist, we remand this case under the authority of *Gaither v. United States, supra,* and direct the trial court to appoint a psychiatric expert under D.C.Code 1978 Supp., § 11–2605(a). The jury's disposition of the case shall remain undisturbed by our holding, and appellant's conviction will stand unless the court-appointed private psychiatrist provides defense counsel with a reasonable basis upon which to pursue an insanity defense, and a jury subsequently determines that appellant was insane at the time he committed the acts in question.

*Affirmed in part and remanded for proceedings not inconsistent with this opinion.*

NEWMAN, Chief Judge, concurring:

I concur in the opinion of the court with the exception of footnote 9 *supra,* at p. 365. That footnote is palpable dictum and, in my judgment, merely adds further confusion to the meaning of our now famous footnote 5 in the case of *Johnson v. United States,* D.C.App., 387 A.2d 1084 (1978) (en banc).