Joyce BROWN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 96–SP–1369.

District of Columbia Court of Appeals.

Argued Sept. 10, 1998.

Decided April 8, 1999.

Steven H. Goldblatt, Washington, DC, appointed by this court, with whom Mary L. Clark, Supervising Attorney and Lance R. Bremer, Student Counsel, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, for appellee.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Joyce Brown was convicted, after a bench trial, of nine counts of violating the Compulsory School Attendance Act, D.C.Code § 31–402 (1995). On appeal, Ms. Brown argues that the statute is unconstitutional under the void for vagueness doctrine, and that the trial court abused its discretion by refusing to authorize defense counsel to engage the services of an expert child psychologist at government expense. We reject appellant's constitutional argument, but remand for entry of an order authorizing appellant's counsel to obtain the services of a child psychologist.

## I.

Joyce Brown was charged on December 1, 1995, with twelve counts of violating the Compulsory School Attendance Act. Ms. Brown's daughter, Lakia Jackson, had been absent for the entire 1994–95 school year with the exception of one day, and for all but nine or ten days out of the forty-two days before December 1, 1995, in the 1995–96 school year. Prior to trial, Ms. Brown filed an *ex parte* request for an order authorizing a psychological examination of both Lakia and Ms. Brown at the government's expense in order to investigate a potential defense. The motion cited a number of traumatic events that had befallen the Brown family from 1993 to 1995. These events included the separation of Ms. Brown from her husband, Ms. Brown's suffering a stroke, the fact that Ms. Brown and her two daughters moved to a new neighborhood, and the pregnancy, at age fourteen, of the older of the Brown daughters. The motion further set forth that defense counsel had spoken with a psychologist to determine the effect of these events on Lakia, the younger of the two daughters, who had refused to go to school during that time period. A Family Division judge denied this request, and also denied appellant's motion for reconsideration filed a short time later. As the trial was about to begin, the trial judge declined a request to reconsider the motions judge's rulings but indicated that in any event he agreed with them.

Before trial, Ms. Brown filed a motion to dismiss the charges against her on the basis that the compulsory school attendance statute was unconstitutional on its face and as applied in her case. The trial court denied the motion prior to trial, and entered a written order after trial explaining its ruling. *See District of Columbia v. Brown,* 124 Daily Wash. L. Rptr. 1965 (D.C.Super.Ct. Aug. 27, 1996).

At trial, the government called as witnesses persons employed by the District of Columbia school system who gave detailed testimony concerning Lakia's absences and their efforts to persuade appellant to have Lakia attend school regularly. Ms. Brown testified that she walked her child to school

every day, only to have the child break and run away. The trial judge did not credit that testimony. There was evidence that Ms. Brown was suffering from a heart condition, and had suffered a stroke. The court found that when the child's older sister and father escorted Lakia to school, the child stayed and attended school. Further, when Lakia began to live with her grandmother and was transferred to another school, she began attending school regularly. Ms. Brown was found guilty of nine of the twelve counts. She filed a timely notice of appeal.

## II.

On appeal, appellant first raises three arguments as to why the statute, D.C.Code § 31–402, should be declared unconstitutional as void for vagueness. The first argument is that the statute fails to state the standard of liability to which a person is held. The second is that the statute does not give proper notice of the behavior proscribed. The third is that the statute is vague in that it impermissibly delegates legislative authority, giving administrative and judicial authorities an inappropriate amount of discretion. Reviewing this Constitutional question *de novo, see Guadalupe v. United States,* 585 A.2d 1348, 1352 n. 7 (D.C.1991), we find ourselves unpersuaded by all three arguments.

 "The test for determining unconstitutional vagueness is whether the language of the regulation is so vague, with respect to what conduct is either proscribed or required, that persons of common intelligence must necessarily guess at its meaning." *Woods v. District of Columbia Nurses' Examining Bd.,* 436 A.2d 369, 374 (D.C.1981)

(citations omitted). When the statute at issue does not implicate First Amendment concerns, the proper inquiry is whether the defendant in question "could not reasonably understand that *his contemplated conduct* is proscribed." *German v. United States,* 525 A.2d 596, 605 (D.C.1987) (quoting *United States v. National Dairy Prod.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)) (emphasis in original). In examining the statute, we are mindful of our "obligation to interpret statutes so as to support their constitutionality." *United States v. Smith,* 685 A.2d 380, 384 (D.C.1996) (quoting *District of Columbia v. Gueory,* 376 A.2d 834, 836 (D.C. 1977) (upholding the constitutionality of a stalking statute)).

> D.C.Code § 31–402(a) (1981) provides that: Every parent, guardian, or other person, who resides permanently or temporarily in the District during any school year and who has custody or control over a minor who has reached the age of 5 years or will become 5 years of age on or before December 31st of the current school year *shall place the minor in regular attendance* in a public, independent, private, or parochial school, or in private instruction during the period of each year when the public schools of the District are in session. This obligation . . . extends until the minor reaches the age of 18 years.

(Emphasis added). Further, D.C.Code § 31–403(d) (1981) states, "The parent, guardian, or other person who has custody or control of a minor covered by § 31–402(a) who is absent from school without a valid excuse shall be guilty of a misdemeanor." Regulations identifying valid excuses are set forth in 5 DCMR § 2101.3.[1]

---

1. 5 DCMR § 2102.3 provides:

> For the purposes of the Compulsory Attendance Act (D.C.Code § 31–402 *et seq.,* as amended), including all students covered by its provisions regardless of whether the students are enrolled in the Public Schools, and for the purpose of attendance records of all students enrolled in the Public Schools, the following are valid reasons for absence from school:
> (a) Illness of the student;
> (b) Illness or other family emergency which requires the presence of the student in the home;
> (c) Death in the student's immediate family;

> (d) Exclusion, by direction of the authorities of the District of Columbia, due to quarantine, contagious disease, infection, infestation, or other condition requiring separation from other students for medical or health reasons;
> (e) Necessity for a student to attend any judicial proceeding as a plaintiff, defendant, witness, or juror;
> (f) Observance of religious holy days by the members of a religious group;
> (g) Lawful suspension or exclusion from school by school authorities pursuant to the provisions of chapter 25;
> (h) Temporary closing of facilities or suspension of classes due to severe weather, official

Appellant first argues that the statute is vague as it fails to set forth adequately the liability standard. As support for this argument, appellant points to the fact that the trial judge chose to apply a "reasonable efforts" standard despite the facially mandatory language.

■ Statutes, however, are not to be construed in a vacuum. Courts must first look at the language of the statute itself to see if it admits to no more than one meaning. *See, e.g., Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) (citations omitted); *see also In re R.F.H.*, 354 A.2d 844, 846–47 (D.C.1976) (construing the word "tampering" to include some improper purpose). Where appropriate, courts must look to other sources, such as history and, of course, previous court decisions, *see, e.g., Standard Oil Co. v. United States*, 221 U.S. 1, 52, 69–70, 31 S.Ct. 502, 55 L.Ed. 619 (1911) (holding Sherman Anti-trust Act was not unconstitutional as general statutory provisions must be construed in light of reason and common law precedents); *United States v. American Tobacco Co.*, 221 U.S. 106, 179–80, 31 S.Ct. 632, 55 L.Ed. 663 (1911) (construing Sherman Anti-trust Act in light of precedents to prohibit all contracts which amount to unreasonable or undue restraint of trade), to determine the proper construction of a statute. Even when a statute uses mandatory language, such as the word "shall," the courts are to construe the statute in the light of reasonableness. *Standard Oil Co., supra*, 221 U.S. at 69–70, 31 S.Ct. 502; *American Tobacco Co., supra*, 221 U.S. at 179–80, 31 S.Ct. 632.

■ Here, the words of the statute clearly state that the parent or guardian of a minor "shall place the minor in regular attendance," D.C.Code § 31–402(a) (1995), and that if the minor is absent from school without an excuse, the parent or guardian "shall be guilty of a misdemeanor." D.C.Code § 31–403(d)

(1995). The trial judge correctly construed the statute to require "reasonable efforts" on the part of the parent or guardian, *see, e.g., Standard Oil Co., supra*, 221 U.S. at 69–70, 31 S.Ct. 502; and the fact that he did so by no means establishes that the statute was vague.

■ Second, contrary to appellant's argument, the statute does give reasonable notice as to what conduct is proscribed. As applied to Ms. Brown, the requirements of the statute were clear: to place her child, of whom she had custody and over whom she had control, in regular attendance in a school. The acceptable excuses for failing to do so are listed in 5 DCMR § 2101.3. Ms. Brown did not place her child in regular attendance in a school and proffered none of the enumerated valid excuses for failing to do so. The statute provided ample warning that this failure could result in criminal liability on the part of Ms. Brown.[2]

Appellant cites to several cases in which compulsory school attendance statutes were held to be unconstitutionally vague. Those cases, however, involved for the most part parents who taught their children at home and who challenged the precision of language in the statute permitting children to be educated in private schools. *See, e.g., State v. Newstrom*, 371 N.W.2d 525 (Minn.1985); *State v. Popanz*, 112 Wis.2d 166, 332 N.W.2d 750 (1983). Ms. Brown has not alleged that she was attempting to teach her child at home or that the portions of the statute relating to non-public schooling were unconstitutionally vague.

■ With respect to the appellant's third argument, we are persuaded that the statute is not an impermissible delegation of legislative authority. A legislative body properly delegates authority when it establishes "an intelligible principle to which a person or body ... is directed to conform...." *Mistretta v. United States*, 488 U.S. 361, 372, 109

activities, holidays, malfunctioning equipment, unsafe or unsanitary conditions, or other condition(s) requiring closing or suspension of classes; and
(i) Other absence(s) approved in advance by the principal upon written request of a parent, guardian, or adult student.

2. As we have pointed out, D.C.Code § 31–403(d) provides that, a "parent, guardian, or other person who has custody or control of a minor covered under § 31–402(a) who is absent from school without a valid excuse shall be guilty of a misdemeanor."

S.Ct. 647, 102 L.Ed.2d 714 (1989) (quoting *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 408, 48 S.Ct. 348, 72 L.Ed. 624 (1928)). The legislature need only "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).

Appellant cites *Woods v. District of Columbia Nurses' Examining Bd., supra,* 436 A.2d at 369, to support her argument. There, this court held the procedure for the reinstatement of a nursing license to be unconstitutional. *Id.* at 373. A regulation authorized the Nurses' Examining Board to issue a license "[u]pon showing of cause *satisfactory* to it...." *Id.* (citing 5 DD DCRR § 60.4) (emphasis added).

The difference between the statutory and regulatory scheme involved in *Woods,* and the scheme here is considerable. The statute in *Woods* gave the Council of the District of Columbia broad authority to regulate business and professional licenses and to promulgate implementing regulations. *Id.* at 373. In 1972, the Council issued regulations which used "satisfactory to [the board]" as a criterion for administrative action.[3] This court found that to be "purely subjective," allowing decisions on an "ad hoc basis." *Id.* at 374. By contrast the statute involved here itself

forbids absence "without a valid excuse." D.C.Code § 31–403(d). As applied to the facts of this case, *see Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982),[4] that language is sufficiently clear to a person of ordinary intelligence. *See Broadrick v. Oklahoma,* 413 U.S. 601, 607–08, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Moreover, appellant was not without a definition of valid excuse. The regulations set forth above defined the statutory term "valid excuse" in detail. Unlike the appellant in *Woods,* the appellant here had far better than minimal guidelines to advise her of what the law required of her. She had detailed regulations which the Council had adopted to carry out the "intelligible principle" embraced in the statute.

## III.

Appellant's next claim of error relates to the denial of her request for authorization to secure the services of an expert psychologist to examine the child and appellant herself and testify regarding school phobia.[5] Appellant contends that she was entitled to the services of an expert at government expense under both the D.C.Code and the United States Constitution.[6]

---

**3.** Congress did not give the Council virtually plenary authority to legislate in this field until the Home Rule Act. Pub.L. 93–198, 87 stat. 774 (1973).

**4.** In *Hoffman Estates,* the Supreme Court stated:

"[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). *See United States v. Powell,* 423 U.S. 87, 92–93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 36, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The rationale is evident; to sustain such a challenge, the complainant must prove that the enactment is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible nor-

mative standard, but rather in the sense that no standard of conduct is specified at all.' *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Such a provision simply has *no core.*" *Smith v. Goguen,* 415 U.S. 566, 578, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).
*Hoffman Estates, supra,* 455 U.S. at 495 n. 7, 102 S.Ct. 1186.

**5.** School phobia is defined as a form of separation anxiety whereby the child refuses to go to school, or uses excuses such as complaints of pain or illness, to justify staying out of school. *Merck Manual of Diagnosis & Therapy,* 2099 (Robert Barkow, *et al.,* eds., 16th ed., Merck Research Lab 1992).

**6.** During oral argument, Corporation Counsel conceded that D.C.Code § 11–2605(a) grants an indigent defendant more rights than required by *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Accordingly, we find it unnecessary to address the constitutional issue raised by appellant.

■ Appellant contends that the denial of her request for a "court-appointed" expert violated D.C.Code § 11–2605(a) (1995), which provides that an indigent defendant may request services "necessary for an adequate defense," and that the court "shall authorize counsel to obtain the services" if the court finds "that the services are necessary and that the person is financially unable to obtain them."[7] The trial court's denial of such a request will be reversed only if the trial court abused its discretion. *Smith v. United States*, 686 A.2d 537, 551 (D.C.1996).

The standard for the very similar step of authorizing the service of a psychiatrist is whether "a reasonable attorney would pursue" a defense requiring the assessment of a psychiatrist. *Gaither v. United States*, 391 A.2d 1364, 1367 (D.C.1978). In *Gaither*, this court stated that the trial court:

> should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge.... In making this determination, the trial court should tend to rely on the judgment of defense counsel who has the primary duty of providing an adequate defense.

*Id.* at 1368 (citations omitted).

Here, appellant's original pretrial motion stated that "a number of traumatic events occurred in Ms. Brown's family between 1993 and 1995," and that, according to a child psychologist, "all of these events certainly had a daunting and debilitating impact upon Ms. Brown's youngest daughter, Lakia Jackson." Defense counsel noted that the compulsory school attendance law penalizes only a parent who has failed to keep a child in school "without valid excuse," and stated that at trial "Ms. Brown may claim that she had a valid excuse for not forcing her daughter to attend school, i.e., that she was physically unable to get her daughter to attend school; that sending her child to school would have caused the child more psychological harm than good; and/or that sending her child to school would have been academically useless because when the child would go she would refuse to participate in class."

In moving for reconsideration of the court's denial of the motion, the defense argued:

> In evaluating and assessing Ms. Brown's credibility in this matter, the Court must have some understanding of what Lakia— the daughter—was going through at the time. It will undoubtedly be very difficult to understand how a child of nine years old could refuse to go to school for two and a half years and how a child of that age could put forth such a resistance that her mother was physically unable to force her to attend school.

■ As the trial court correctly applied a "reasonable efforts" standard to this case, the issue of whether the child suffered from school phobia was relevant to the defense.[8] Ms. Brown sought the opportunity to have the trier of fact consider expert psychological testimony concerning Lakia's strong and abnormal resistance to attending school, along with Ms. Brown's apparently fragile health and other relevant circumstances, in determining whether Ms. Brown made "reasonable efforts" to secure Lakia's attendance at school. We are persuaded that under all the circumstances a reasonable attorney would have pursued a defense involving school phobia. Accordingly, the initial denial of the request for court authorization to secure the services of a psychologist was error.

It remains for this court to decide whether the denial of the motions for authorization to engage the services of a psychologist constituted reversible error, or instead was harmless. In doing so, we are guided by our

---

7. Appellant's pretrial motions and her brief on appeal refer to court "appointment" of an expert child psychologist. Under the statute one does not request that the court "appoint" an expert, but asks the court to authorize counsel to obtain the services of an expert at government expense.

8. Counsel for the appellant conceded at oral argument that school phobia itself probably would not constitute an "[i]llness of the student" as an excuse for absence from school. 5 D.C. Mun. Regs. § 2101.3. Indeed, one medical reference source indicates that the proper treatment for school phobia in a younger child is an "immediate return to school." *Merck Manual of Diagnosis & Therapy, supra* note 4, at 2099.

decision in *Gaither, supra,* 391 A.2d at 1369, n. 8. In the context of assessing whether an insanity defense was warranted, this court remanded the case for the sole purpose of appointing a psychiatrist. *Id.* at 1369. The psychiatrist was to report directly to the defense attorney on whether there was a basis for pursuing an insanity defense. *Id.* This court stated that if, based upon the report, the defense attorney concluded that the insanity defense was not warranted, the failure to appoint a psychiatrist in the earlier stage of the proceeding would be viewed as a harmless error. *Id.* at 1369, n. 8. This court stated that as the government had proven beyond a reasonable doubt that the defendant had committed the offense charged, the only remaining issue was that of the sanity of the defendant. *Id.* at 1370. Therefore, this court concluded that the only issue that could be raised in the proceeding on remand would be the defendant's sanity. *Id.*

In this case, however, the issue is more complex. This is not an instance in which the insanity of the defendant will serve as defense to the crime charged despite the fact that the prosecution has proven all of the necessary elements of the offense. Rather, Lakia's possibly suffering from school phobia weaves into the issue of whether Ms. Brown engaged in "reasonable efforts" to compel her daughter to attend school.

We observe in this connection that the prosecution appears to have made a strong case against Ms. Brown. The trial judge characterized her testimony that she attempted to walk her daughter to school every day as not credible. He found as a fact that when the child was accompanied by her older sister or her father she attended school. The trial judge also found that the child was living at the time of trial with her grandmother, and was attending school regularly. Further, the record reflects that Ms. Brown never attempted to take her daughter to a psychologist while her daughter was refusing to attend school. Obviously, all of this tends to refute the defense that Ms. Brown made "reasonable efforts" to secure the attendance of her daughter at school.

The defense, however, was not in a position to place before the court any evidence on school phobia, what it is, whether Lakia was suffering from it, or whether there was some relationship between any school phobia, and the ability of Ms. Brown, through "reasonable efforts," to secure her daughter's regular attendance at school. Crucial to the success or failure of Ms. Brown's effort to make a showing that she had made "reasonable efforts" to secure her daughter's attendance at school was the court's assessment of her credibility. Under the circumstances, the defense made an adequate showing of its need for expert psychological testimony which potentially could explain the intensity of the child's resistance to attending school, and the nature of the child's reaction to the prospect of separation from her mother. Such testimony could corroborate some aspects of appellant's testimony. If there develops credible evidence that Lakia suffered from school phobia, and that that condition could have caused in Lakia the kind of conduct described by Ms. Brown, the trial court will have to determine how Lakia's resistance to attending school, Ms. Brown's health, and her interaction with her daughter relate to the issue of whether Ms. Brown made "reasonable efforts" to see to it that her daughter attended school regularly.

▇ In light of the power of this court to "require such proceedings to be had, as [are] just in the circumstances," D.C.Code § 17–306 (1995), we remand this case with instructions that the trial court authorize counsel for Ms. Brown to secure the services of a child psychologist to examine both Lakia and Ms. Brown. If, as a result of the psychologist's examination of Lakia and Ms. Brown, defense counsel is in a position to present material evidence tending to establish a defense to the charges, the trial court should, upon request of the defendant, reopen the record, and conduct such further proceedings as are warranted. If the result of the examination does not put defense counsel in such a position, the trial court's denial of authorization to engage the services of a psychologist will have been shown to be harmless error.

*Remanded.*

SCHWELB, Associate Judge, concurring:

I concur in the judgment and join the opinion of the court. I add a few observations regarding whether a remand is necessary.

Ms. Brown sought the services of an expert to support a proffered defense along the following lines:

> (1) that she was physically unable to get her daughter to attend school; (2) that sending her child to school would have caused the child more psychological harm than good; and/or (3) that sending her child to school would have been academically useless because when the child would go she would refuse to participate in class.

(Numerals added.) Ms. Brown testified, however, that she attempted to walk Lakia to school *every day*—an account rejected by the trial judge. Her testimony was not that taking Lakia to school would have harmed the child (as in point 2 of her proffer) or that doing so would have been "academically useless" (as in point 3 of her proffer). On the contrary, Ms. Brown insisted that she very much wanted her daughter to be in school and that she tried hard to bring her there, but that the child ran away every day. If Ms. Brown had testified that her reason for not taking Lakia to school was that school harmed Lakia in some way, then we would have an entirely different case.

Point 1 of the defense proffer, on the other hand, would tend to corroborate Ms. Brown's testimony that Lakia consistently refused to attend school and thwarted Ms. Brown's efforts to take her there. The proposed expert evidence could have revealed traumatic events in Lakia's life and might have reinforced Ms. Brown's testimony regarding the intensity of Lakia's resistance to going to school.[1]

Under all of the circumstances, I am not prepared to dispute the court's conclusion that a remand is necessary to determine if the trial court's error in refusing to authorize the services of an expert psychologist was harmless. In my opinion, however, it is a very close call. Arguably, we could properly conclude on the present record, and without a remand, that Ms. Brown was not substantially prejudiced by the trial court's refusal to approve her request for the services of an expert.

---

1. It is worth noting, though, that according to the testimony, Lakia attended school regularly when her grandmother or father took her.