422 A.2d 969 (1980)
In the Matter of Sarah R. HOLMES, Appellant.
No. 79-335.
District of Columbia Court of Appeals.
Argued June 10, 1980.
Decided October 6, 1980.
*970 Stephen H. Glickman, Public Defender Service, Washington, D.C., for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance for appellant. Kenneth J. Burchfiel, Washington, D.C., filed a brief.
Nathan I. Finkelstein, Washington, D.C., for appellee.
Before KELLY, FERREN and PRYOR, Associate Judges.
KELLY, Associate Judge:
Appellant contests her involuntary civil commitment to St. Elizabeths Hospital under the District of Columbia Hospitalization of the Mentally Ill Act, D.C. Code 1973, §§ 21-501 to -592 (Ervin Act). She alleges numerous errors which, we conclude, are not meritorious on this record; consequently, we affirm.
Appellant had been a voluntary or involuntary patient at St. Elizabeths since 1977, except for brief periods of release, when St. Elizabeths petitioned the Superior Court for her indefinite judicial hospitalization in July of 1978. The Commission on Mental Health found that, although appellant was mentally ill, she was not a danger to herself or others and she was released.[1]
The petition with which this appeal is concerned was filed several months later by appellant's conservator.[2] Appellant was *971 subsequently examined by the Commission and a hearing was held,[3] after which the Commission recommended to the court her indefinite commitment. Appellant demanded a jury trial[4] and filed unsuccessful motions to dismiss the petition and to suppress her testimony. Thereafter, the jury found her to be mentally ill and likely to injure herself.[5]
Appellant recites generally, and at length, a litany of procedural and substantive due process requirements in civil commitment proceedings, none of which is disputed.[6] She claims that, because she was denied due process in the proceedings before the Commission on Mental Health, the proceedings were void and her pretrial motions should have been granted.
Appellant vigorously contested her commitment at the time of the hearing.[7] She contends on appeal that her interest in her liberty is the prime consideration here and that it transcends any public interest in securing her treatment primarily because of her age and physical condition. In advancing this argument, she correctly points out that certain due process rights, allegedly violated in this case, are explicitly guaranteed her in the Ervin Act (e.g., right to a hearing, D.C. Code 1973, § 21-542; right to assistance of counsel at all proceedings before the Commission, D.C. Code 1973, § 21-543). We consider her allegations in the order advanced.

I
Appellant first claims that she was denied due process of law when the Commission made its findings of fact without applying any set standard of proof to the evidence presented,[8] and then forwarded those findings to the court along with its recommendation of commitment. This procedure, she argues, results in a commitment based on less than the alleged requisite standard of clear and convincing evidence. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); In re Nelson, D.C.App., 408 A.2d 1233 (1979).
On this record, we decline to impose a standard of proof requirement on the Commission. The purpose of Commission proceedings is not to adjudicate the issue of commitment in a final manner. Rather, it is to enable the Commission, a panel of neutral experts, to perform its preliminary screening function and to report responsibly its findings and recommendation to the court.[9] Even assuming that there is a *972 defined standard of proof requirement in Commission proceedings,[10] the fact is that appellant is not in a position to claim that she was prejudiced by the Commission's failure to comply with it. In this case there was a full trial in which a jury, independent of the Commission, found beyond a reasonable doubt[11] that appellant was mentally ill and a danger to herself.
Appellant has speculatively argued that the Commission must apply a clear and convincing standard to its evidence because all committees might not request a jury trial and a trial judge might simply "rubber stamp" the Commission's report and recommendation. A record reflecting such a situation could present serious questions, for it is unchallenged that one cannot be civilly committed on a finding supported by less than clear and convincing evidence. In re Nelson, supra at 1238. However, appellant's record differs markedly from the one she hypothesizes; consequently, her argument is irrelevant to her case. She received all the constitutional safeguards due her in a commitment proceeding.

II
Appellant next alleges a denial of due process by being "examined by the Commission in a secret, off the record proceeding without the assistance of counsel," i.e., a preliminary psychiatric examination conducted by two Commission members before her actual mental health hearing.
An allegedly mentally ill person must be represented by counsel in all proceedings before the Commission or the court. D.C. Code 1973, § 21-543 (emphasis added). Section 21-542(a) requires that
The Commission shall promptly examine a person alleged to be mentally ill after the filing of a petition under section 21-541 and shall thereafter promptly hold a hearing on the issue of his mental illness. The hearing shall be conducted in as informal a manner as may be consistent with orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the person named in such petition. In conducting the hearing, the Commission shall hear testimony of any person whose testimony may be relevant and shall receive all relevant evidence which may be offered. A person with respect to whom a hearing is held under this section may, in his discretion, be present at the hearing, to testify, and to present and cross-examine witnesses.
The fact that two members of the Commission (psychiatrists) examined appellant before *973 the hearing does not, in our judgment, make this examination a "proceeding" within the meaning of the statute requiring the assistance of counsel. See Lynch v. Baxley, 386 F.Supp. 378, 389 n.5 (M.D.Ala.1974); Lessard v. Schmidt, 349 F.Supp. 1078, 1099-1100 (E.D.Wisc.1972), vacated and rem'd, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661, on remand, 379 F.Supp. 1376 (1974), vacated and rem'd, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), reinstated on remand, 413 F.Supp. 1318 (1976).
A psychiatric examination is not the type of "proceeding" that requires an opportunity to cross-examine the examiners or to object to their consideration of purportedly irrelevant material.[12] Even assuming arguendo that the Fourth Amendment exclusionary rule is applicable to the examination, as argued by appellant, the record does not support her argument that the Commission's recommendation and the doctors' testimonies should have been suppressed at trial. The examination is not a trial; not a hearing; not a proceeding requiring assistance of counsel. Appellant's repeated analogies to the criminal law are misplaced. In re Kossow, supra at 104.[13] The judgment on appeal is
Affirmed.
NOTES
[1] D.C. Code 1973, § 21-544 directs the Commission to order immediately the release of the alleged mentally ill person if he "is not mentally ill or if mentally ill, is not mentally ill to the extent that he is likely to injure himself or other persons if allowed to remain at liberty. . . ."
[2] D.C. Code 1973, § 21-541. The petition stated that, after appellant's release from St. Elizabeths, she resided on the streets of Washington in the area of Murphy's Department Store on F Street. She refused all offers of help from her family and conservator and was in need of medical attention. Worried that appellant would be unable to care for herself in the cold weather that was approaching, the conservator began commitment proceedings.
[3] D.C. Code 1973, § 21-542(a) directs the Commission to examine the person alleged to be mentally ill and to hold a hearing on the issue of mental illness promptly.
[4] D.C. Code 1973, § 21-545(a).
[5] Appellant was committed to the D.C. Village, a senior citizen facility, for an indefinite period. She remains a resident there.
[6] See, e.g., O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).
[7] She stated at the Commission hearing:

I don't want no hearing. . . . [W]hy you keep grabbing me back when I've done no crime in my life? Why you keep asking me?. . . I'm not a child. This is my life, it's not yours. It's my reputation you fooling with. You write all those papers you want. I'm not going to sign nothing.
[8] At the hearing, the Commission chairman was asked:

[COUNSEL]: May I ask just for the record what the burden is-beyond a reasonable doubt?
[CHAIRMAN]: No, we don't have any burden here.
[9] In In re Kossow, D.C.App., 393 A.2d 97 (1978), the appellants argued that only public prosecutors, not private citizens, could pursue judicial civil commitment proceedings. In reviewing the function of the Mental Health Commission, the Court stated:

The screening and compromise functions of the prosecutor are essentially provided for by the present statutory system, even without intervention by a public prosecutor. When a private party files a petition for involuntary hospitalization of another, that petition is first considered by the Commission, "which was established `in recognition of the fact that the assistance of unbiased experts was essential to assist the courts in dealing with insanity cases.'" Lake v. Cameron, supra [124 U.S.App.D.C.] at 269, 364 F.2d at 662, quoting from De Marcos v. Overholser, 78 U.S.App.D.C. 131, 132, 137 F.2d 698, 699, cert. denied, 320 U.S. 785, 64 S.Ct. 157, 88 L.Ed. 472 (1943). The Commission then examines "the person alleged to be mentally ill" and "hold[s] a hearing," at which the respondent is entitled to counsel and all relevant evidence is admissible. D.C. Code 1973, §§ 21-542(a), -543; Super.Ct.Ment.H.R. 3. "[I]f the Commission finds . . . that the person. . . is not mentally ill or if mentally ill, is not mentally ill to the extent that he is likely to injure himself or other persons if allowed to remain at liberty, the Commission shall immediately order his release." D.C. Code 1973, § 21-544. If, however, the Commission finds mental illness and dangerousness, it must issue a written report to the Superior Court with findings of fact, conclusions, and recommendations for disposition. Id.; Super.Ct.Ment.H.R. 3(b). The court then sets the matter for hearing. D.C. Code 1973, § 21-545.
It is apparent that the Commission, as a body of experts, provides the "screening" function normally associated with prosecutorial discretion. Moreover, the fact that the Commission initially dismissed the petition for appellant Rubain's hospitalization, based on his agreement to undergo voluntary treatment, is evidence that the Commission can and does facilitate "compromise" dispositions. [Id. at 106-07; (footnotes omitted).]
[10] No case directly supports appellant's position. Addington v. Texas, supra, on which she relies, and In re Nelson, supra, deal with the standard of proof in final judicial, not preliminary, commitment proceedings.
[11] At the time of appellant's trial, the standard of proof in judicial civil commitment proceedings was the beyond a reasonable doubt standard. See In re Hodges, D.C.App., 325 A.2d 605 (1974). In In re Nelson, supra, a case decided after appellant's trial, this court changed the required standard to one of clear and convincing evidence. Id. at 1238.
[12] It appears that counsel was present at the time, but did not attend the actual examination.
[13] Appellant's final argument, that policy considerations underlying the Ervin Act require suppression of references to her hospitalization antedating this petition, is without merit.