Dwayne WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 81–470.

District of Columbia Court of Appeals.

Submitted June 29, 1982.

Decided Oct. 1, 1982.

Frederick Scott Avery III, Washington, D.C., appointed by this court, was on the brief for appellant.

Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, R. Dennis Osterman, and Karen J. Krug, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEWMAN, Chief Judge, BELSON, Associate Judge, and YEAGLEY, Associate Judge, Retired.

NEWMAN, Chief Judge:

■ This is an appeal from a jury conviction for assault with intent to kill while armed, in violation of D.C.Code 1981, § 22–501. Appellant raises numerous issues on appeal, the most important of which is whether the admission of testimony regarding statements he made to a psychologist in the course of a court ordered pretrial mental examination violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to the effective assistance of counsel. We hold that neither constitutional right was violated and affirm.[1]

I

There is no dispute as to the basic fact that appellant, while on unauthorized leave from St. Elizabeths Hospital, visited his wife's apartment on December 7, 1979, and stabbed her approximately fifty times with a pair of scissors. The defense counsel acknowledged in his opening statement that appellant committed the act charged. The sole issue at trial was appellant's state of mind when he committed the offense—*i.e.*, whether he was not guilty by reason of insanity.

At the time of the offense, appellant was a patient at St. Elizabeths Hospital, having

1. Appellant's other contentions are (1) that two statements made by the prosecutor at closing argument were so prejudicial that they should have been stricken even though no objection was made at trial; (2) that the court erred in failing to instruct the jury on the lesser included offense of assault with a dangerous weapon; (3) that the court committed plain error in failing to give an unrequested instruction; (4) that the court committed plain error in failing to inform the jury that appellant was found competent to stand trial. We find each of these contentions without foundation. First, even assuming that the prosecutor mischaracterized the testimony as appellee contends, the asserted conduct could not be said to have affected the verdict. *See Hyman v. United States,* D.C.App., 342 A.2d 43, 45 (1975).

Second, there was no legal basis in the evidence to warrant an instruction on assault with a dangerous weapon nor was there any legitimate factual dispute in the evidence as to any of the elements of the crime charged. *See Petway v. United States,* D.C.App., 420 A.2d 1211, 1213 (1980) (per curiam); *Day v. United States,* 390 A.2d 957, 962 (1978). Third, while it might have been advisable for the court to have cautioned the expert witnesses about their presentation of psychiatric testimony, *see* Criminal Jury Instructions for the District of Columbia, No. 1.13 (3d ed. 1978), the failure to give this instruction in the absence of a request from the parties does not require reversal. Finally, the trial court did not err in the manner in which it handled the competence matter.

been continually confined since found not guilty by reason of insanity by the United States District Court for the District of Columbia of first-degree murder in 1969 and armed robbery in 1973. The day after the offense, the Superior Court appointed counsel and ordered, pursuant to D.C.Code 1981, § 24–301(a), that appellant undergo a comprehensive mental examination at St. Elizabeths to determine both his competency to stand trial and his mental state at the time of the offense.[2] In accordance with this order, appellant was examined by a team of St. Elizabeths medical staff who concluded, in a written report filed with the court, that he was competent for trial and was not suffering from a mental disease or defect at the time of the offense that rendered him unable to conform his conduct to the requirements of the law.

 To prove his insanity defense at trial, appellant relied heavily on the fact that he was under a continuing adjudication of insanity as of the date of the offense.[3] In addition, appellant presented a clinical psychologist from St. Elizabeths Hospital, Dr.

John Maher, to testify that appellant's prior mental disease and defects continued at the time of the offense. While Dr. Maher did not participate in the pretrial examination ordered by the court,[4] he concluded on the basis of his numerous clinical contacts with appellant from mid-1975 through 1978, that appellant's crime was the result of his continuing mental illness. Appellant did not take the stand.

Two clinical psychologists who had participated in the court-ordered pretrial examination of appellant testified for the government in rebuttal. Dr. Robert Madsen's opinion was that the crime was not the product of mental illness because his prior testing of appellant showed no signs of mental illness. Dr. Robert Polley, the Clinical Administrator of the Pretrial Evaluation Ward at St. Elizabeths, was of the same viewpoint. Dr. Polley testified, based on the pretrial examination, that appellant understood at the time of the offense that what he was doing was wrong and had sufficient control to prevent himself from

2. While D.C.Code 1981, § 24–301(a) explicitly provides the court only with the authority to order an examination for purposes of determining an accused's competency to stand trial, it is not contested that such examination may also extend to the issue of mental responsibility. *See United States v. Ashe,* 138 U.S.App.D.C. 356, 359 n. 3, 427 F.2d 626, 629 n. 3 (1970); *Winn v. United States,* 106 U.S.App.D.C. 133, 135, 270 F.2d 326, 328 (1959), *cert. denied,* 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961). *See also* Super.Ct.Cr.R. 12.2.

Federal courts have inherent power to call for a psychiatric examination of the accused's mental state at the time of the crime even though specific statutory authority in 18 U.S.C. § 4244 also extends only to examinations for the purpose of establishing competency to stand trial. *See* cases cited in *United States v. Hinckley,* 525 F.Supp. 1342, 1347–48 (D.D.C. 1981).

While some jurisdictions prohibit the practice of combining competency examinations with sanity examinations, we conclude that the pretrial examination may be for the dual purpose of determining competency to stand trial and sanity at the time of the offense as long as the defendant, through his counsel, is informed of both purposes as was done in this case. *See, e.g., United States v. Reifsteck,* 535 F.2d 1030, 1033 (8th Cir.1976); *United States v. Moudy,* 462 F.2d 694, 697 (5th Cir.1972); *Unit-*

*ed States v. Driscoll,* 399 F.2d 135, 137–38 (2d Cir.1968).

3. Appellant had the burden of proving by a preponderance of the evidence that, as a result of a mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to recognize the wrongfulness of his conduct. *See* D.C.Code 1981, § 24–301(j); *Bethea v. United States,* D.C.App., 365 A.2d 64, 79–83 (1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); Criminal Jury Instructions for the District of Columbia, No. 5.07 (3d ed. 1978).

4. Appellant did not request to be examined by a private psychiatrist pursuant to D.C.Code 1981, § 11–2605(a), which provides:

Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court shall authorize counsel to obtain the services.

*See generally, Dobson v. United States,* D.C. App., 426 A.2d 361, 367–69 (1981); *Gaither v. United States,* D.C.App., 391 A.2d 1364 (1978).

doing it; that the defendant's actions were the conscious result of a decision to kill his wife because of perceived infidelity. Dr. Polley further testified that his conclusions were based in part on appellant's own description and explanation of the events of December 7, 1979. Dr. Polley testified at length regarding what appellant told him about the offense and its surrounding circumstances.

Though appellant failed to object to this testimony below,[5] he now contends that testimony regarding statements about the crime obtained from him in the court-ordered pretrial psychiatric examination (as well as conclusions reached by Dr. Polley based on those statements), was incriminating within the meaning of the Fifth Amendment as used by the government to oppose his insanity defense. Additionally, despite the absence of any objection below, appellant argues that the pretrial examination was conducted in violation of his right to the effective assistance of counsel under the Sixth Amendment, because of the absence of his counsel from the examination.

## II

The privilege against self-incrimination derives from the Fifth Amendment provision that "[N]o person ... shall be compelled in any criminal case to be a witness against himself...." According to the Supreme Court, "[t]he essence of this basic constitutional principle is 'the requirement that the state which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle v. Smith,* 451 U.S. 454, 462, 101 S.Ct. 1866, 1872, 68 L.Ed.2d 359 (1981), quoting *Culombe v. Connecticut,* 367 U.S. 568, 581–82, 81 S.Ct. 1860, 1867–1868, 6 L.Ed.2d 1037 (1961) (opinion announcing the judgment).

■ The Fifth Amendment privilege clearly applies to "testimony which might

tend to show that [the defendant] ... committed a crime." *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110 (1892). *See also Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, as established by case law as well as statutes and rules designed to secure a defendant's Fifth Amendment privilege against self-incrimination, no statement made by a defendant during a court-ordered psychiatric examination may be admitted in evidence against the defendant on the issue of whether he is guilty of the crime charged. *See* 18 U.S.C. § 4244 (1969); Super.Ct.Cr.R. 12.2(c); Fed.R. Crim.P. 12.2(c); *United States v. Leonard,* 609 F.2d 1163, 1165–66 (5th Cir.1980); *Gibson v. Zahradnick,* 581 F.2d 75, 78 (4th Cir.), *cert. denied,* 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978); *United States v. Cohen,* 530 F.2d 43, 47 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Alvarez,* 519 F.2d 1036, 1042 (3d Cir.1975); *United States v. Julian,* 469 F.2d 371, 376 (10th Cir.1972); *United States v. Bohle,* 445 F.2d 54, 66–67 (7th Cir.1971); *United States v. Albright,* 388 F.2d 719, 725 (4th Cir.1968). In other words, the Fifth Amendment prohibits the defendant from being made "the deluded instrument of his own conviction." *Culombe v. Connecticut, supra,* 367 U.S. at 581, 81 S.Ct. at 1867, quoting 2 HAWKINS, PLEAS OF THE CROWN 595 (8th ed. 1824).

■ Likewise, it has recently been made clear that, absent appropriate warnings prior to a court-ordered psychiatric examination, no testimony based on the defendant's statement at that examination can be used in the determination of a defendant's punishment. *Estelle v. Smith, supra.* In *Estelle,* a jury found Smith guilty of murder. Texas law required the jury to resolve three additional issues in a separate sentencing proceeding before the court could impose the death penalty, one of which was wheth-

---

5. Since no motion to suppress was ever filed in this case, and no objection to the testimony now challenged was made at trial, only plain error affecting the substantial rights of the ac-

cused would constitute grounds for reversal. *Watts v. United States,* D.C.App., 362 A.2d 706 (1976) (en banc).

er the defendant will be dangerous in the future and posed a continuing threat to society. Despite the fact that Smith called no psychiatric witnesses at the sentencing hearing, the state called a psychiatrist, Dr. Grigson, who had conducted a pretrial psychiatric examination to determine Smith's competency to stand trial. Dr. Grigson testified, based on information obtained from his pretrial examination of Smith, that he found Smith to be a severe sociopath who would commit similar criminal acts if given the opportunity. The jury found Smith dangerous and the death penalty was imposed.

The Supreme Court, however, held that Smith's Fifth Amendment privilege against self-incrimination barred the use of Dr. Grigson's testimony at the penalty phase of his trial, unless he is advised prior to the pretrial examination of his right to remain silent and that any statement he made could be used against him at the sentencing proceeding. The State argued that Smith was not entitled to the protection of the Fifth Amendment because Dr. Grigson's testimony was used only to determine punishment after conviction, not to establish guilt. The Court, however, found no reason to distinguish between the guilt and penalty issues of the capital murder trial with respect to the Fifth Amendment protections.[6]

■ Yet, the protection of the Fifth Amendment does not extend to the sanity determination,[7] for the government's use of the defendant's statement obtained in a court-ordered psychiatric examination is not incriminating within the meaning of the Fifth Amendment when used solely for the purpose of rebutting the defendant's insanity claim. *United States v. Whitlock,* 214 U.S.App.D.C. 1094, 663 F.2d 1094, 1106–07 (1980). *See also United States v. Bennett,* 148 U.S.App.D.C. 364, 370–71, 460 F.2d 872, 878–79 (1972); *Edmonds v. United States,* 106 U.S.App.D.C. 373, 375, 273 F.2d 108, 114 (1959) (en banc), *cert. denied,* 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960) (distinguishing between use of defendant's statements on factual guilt and sanity for purposes of 18 U.S.C. § 4244). First, the psychiatric evidence did not assist the government in proving that appellant committed the offense since sanity is not an element of a criminal offense in the District of Columbia. *Bethea v. United States,* D.C.App., 365 A.2d 64, 94 (1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977).[8] As the jury was instructed in this case, the issue of the defendant's sanity is to be considered only after the jury is satisfied that the government has proved each element of the crime charged, including the requisite intent, beyond a reasonable doubt. The insanity defense, on which the defendant bears the burden of proof, remains separable from the question of whether the defendant violated a criminal statute. Thus, the defendant's statements were not used to convict him as the privilege against self-incrimination prohibits. Second, the testimony provided by Dr. Polley did not assist the state in imposing punishment. While the eventual application of either a criminal sanction or a hospital commitment involving loss of liberty is at stake in the sanity determination, the psychiatric testimony does not affect the penalty imposed

---

6. Additionally, the court rejected both the state's contention that Smith's communications to the psychiatrist were nontestimonial, and thus did not warrant Fifth Amendment protection, *Estelle v. Smith, supra,* 451 U.S. at 465, 101 S.Ct. at 1874, and the state's contention that because the defendant was questioned by a court-appointed psychiatrist, there was no custodial interrogation as envisioned by *Miranda, id.,* 384 U.S. at 466–69, 86 S.Ct. at 1623–1625.

7. Nor is the statutorily created physician-patient privilege available in sanity determinations. D.C.Code 1981, § 14–307(b)(1). *See*

*generally, United States ex rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976), *affirmed without opinion,* 556 F.2d 556 (2d Cir.1977).

8. *Compare United States v. Malcolm,* 475 F.2d 420, 426–27 (9th Cir.1973) (because sanity is one of the components of guilt determination, statute bars psychiatrist who conducts pretrial competency examination from testifying on direct examination to statements defendant made during the course of his psychiatric examination), and *United States v. Alvarez,* 519 F.2d 1036, 1042 (3d Cir.1975) (same).

on the defendant after guilt is determined. Rather, the purpose of the determination of whether the defendant was either "sane" or "insane" at the time of the offense is to establish the moral basis for the imposition of a sanction. Only after this determination is a "penalty" decided upon.[9] We do not think that by relying on the statements the defendant made to Dr. Polley without prior warning, the government made the defendant the "deluded instrument" of his own punishment.[10]

■ Even if the evidence obtained from defendant's pretrial examination were incriminating in character when used to establish his sanity, the Fifth Amendment privilege against self-incrimination would not require its suppression in this case. We agree with the position espoused by the majority of federal courts and cited with apparent approval by the Supreme Court in *Estelle*, that where the defendant puts his sanity in issue, he is constructively deemed to have waived his privilege with respect to the sanity determination. *Estelle v. Smith, supra*, 451 U.S. at 465–66, 101 S.Ct. at 1874–75, and cases cited therein. By presenting Dr. Maher to testify in support of his insanity defense, White waived any privilege that may have existed just as if he had elected to testify at trial.[11] He is not allowed to call a psychiatric witness to prove his claim that he should avoid criminal punishment because of his mental state at the time of the crime and then invoke the privilege to deprive the government of its most effective means of controverting defendant's proof—the rebuttal testimony of other examining psychiatrists. *Id.* 451 U.S. at 465–66, 101 S.Ct. 1874–75. *See United States v. Cohen, supra* at 47–48; *Karstetter v. Cardwell*, 526 F.2d 1144, 1145 (9th Cir. 1975); *United States v. Bohle, supra* at 66–67; *United States v. Weiser*, 428 F.2d 932, 936 (2d Cir.1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *United States v. Baird*, 414 F.2d 700, 710 (2d Cir.1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *United States v. Albright, supra* at 724–25; *Alexander v. United States*, 380 F.2d 33, 39 (8th Cir.1967); *Pope v. United States*, 372 F.2d 710, 720–21 (8th Cir.1967) (en banc), *vacated and remanded on other grounds*, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); *Blaisdell v. Commonwealth*, 372 Mass. 753, 364 N.E.2d 191, 200–01 (1977); *State v. Whitlow*, 45 N.J. 3, 11, 210 A.2d 763, 767 (1965); *Lee v. County Court of Erie County*, 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, *cert. denied*, 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971).

In this case, Dr. Polley's testimony resulting from the court-ordered psychiatric examination was designed solely to rebut appellant's proof of insanity offered by Dr. Maher. While some of Dr. Polley's testimony incorporated statements by appellant regarding the manner in which he planned and committed the offense, the Fifth Amendment does not bar its introduction since appellant admitted that he committed the crime charged and the challenged testimony was elicited solely for the purpose of supporting Dr. Polley's conclusion that appellant was criminally responsible for the offense. *United States v. Hinckley, supra.*

---

**9.** If a defendant is found guilty, a sentencing hearing is held at a later point to determine the appropriate sanction. If a defendant is found not guilty by reason of insanity, he is automatically committed to St. Elizabeths Hospital, to be released only when it is established that he has recovered his sanity and will not in the reasonable future be dangerous to himself or others. D.C.Code 1981, § 24–301(e).

**10.** The sanity determination is a necessary predicate to criminal punishment. However, so is a competency determination. In *Estelle*, the Supreme Court made clear that a state's use of a defendant's communications to a court-appointed psychiatrist to prove compe-

tency does not raise any Fifth Amendment issue. *Estelle v. Smith, supra*, 451 U.S. at 465, 101 S.Ct. at 1874.

**11.** "Once a defendant decides to testify, '[t]he interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and the limits of the privilege against self-incrimination.'" *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), *quoting Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958).

## III

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." In a line of decisions beginning with *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court has held that in addition to counsel's presence at trial, an accused is guaranteed the assistance of a lawyer at any critical stage of the proceedings, "where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226–27, 87 S.Ct. 1926, 1931–1932, 18 L.Ed.2d 1149 (1967).

In *Estelle v. Smith, supra,* the Court decided that a pretrial psychiatric examination was a "critical stage" for Sixth Amendment purposes, at least where that examination provided a basis for the psychiatrist to testify for the government on the issue of whether the accused's future dangerousness required imposition of the death penalty. The defendant's counsel was not notified in advance that the psychiatric examination would encompass the issue of dangerousness and thus, the defendant was denied his counsel's assistance in deciding whether or not to submit to the examination. Thus, the Court held that the death penalty was imposed in violation of the defendant's Sixth Amendment right to assistance of counsel.

■ For the same reason that the psychiatric interview proved to be a "critical stage" in *Estelle,* we think appellant's psychiatric examination was a "critical stage" of the aggregate proceedings against White. The staff conference in this case like the competency examination in *Estelle,* represented an interview with a court-appointed expert who, while originally theoretically impartial, testified for the prosecution. While the decision of whether to submit to the examination in this case was not the "life and death matter" it was in *Estelle,* the consequences to the appellant were certainly significant enough that "a defendant should not be forced to resolve [it] without 'the guiding hand of counsel.'"

*Estelle v. Smith, supra* 451 U.S. at 471, 101 S.Ct. at 1877, *quoting Powell v. Alabama, supra* 287 U.S. at 69, 53 S.Ct. at 64. Dr. Polley's testimony was largely determinative of whether appellant's admitted commission of the crime resulted in a significant term of imprisonment [15 years to life] or the continued indeterminate commitment to St. Elizabeths.

■ Yet, the fact that the examination proved to be a "critical stage" in this case does not require us to hold that appellant's Sixth Amendment right to assistance of counsel was abridged when his counsel was not present at the examination. In *Estelle,* the Court ruled only that because the examination took place without previous notice to counsel, the introduction of Dr. Grigson's testimony was impermissible. The Court cited with seeming approval the Court of Appeals' holding that Smith had no constitutional right to have counsel present during the examination. *Estelle v. Smith, supra* 451 U.S. at 470 n. 14, 101 S.Ct. at 1877 n. 14. *See Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979). We agree with the vast majority of federal courts that have considered the matter and decided that a defendant has no Sixth Amendment right to the presence of counsel at a pretrial psychiatric examination. *United States v. Cohen, supra; United States v. Greene,* 497 F.2d 1068 (7th Cir.1974) *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *United States v. Trapnell,* 495 F.2d 22 (2d Cir.), *cert. denied,* 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); *United States v. Bohle, supra; United States v. Baird, supra; United States v. Albright, supra; United States v. Hinckley, supra; United States v. Fletcher,* 329 F.Supp. 160 (D.D.C.1971). Not only would the presence of counsel limit the effectiveness of the court-ordered examination, but the need for the presence of counsel is significantly obviated since the accused's privilege against self-incrimination will be given full effect with regard to his inculpatory statements to the examining expert on the issues of guilt and punishment. We think the appropriate constitutional balance is struck when the accused's

counsel is informed prior to the court-ordered examination of its purpose so that appropriate advice may be given. Since the record in this case reveals that this prior notice was accomplished, there was no Sixth Amendment violation.

*Affirmed.*