**In re Rhea B.A. MORROW, Appellant.**

**No. 80–114.**

District of Columbia Court of Appeals.

Argued Feb. 17, 1983.

Decided July 12, 1983.

---

Gregory B. Macaulay, Washington, D.C., appointed by this court, for appellant.

Wendy Bebie, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and Judith Hetherton, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

, Before NEWMAN, Chief Judge, and NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

Pursuant to D.C.Code §§ 21–541, –551 (1981), on November 21, 1979, a jury found appellant mentally ill and likely to injure herself or others as a result of her mental illness. On December 17, 1979, she was committed indefinitely to St. Elizabeths Hospital. On appeal she raises two issues: (1) whether the trial court abused its discretion and prejudiced appellant's defense when it denied, pretrial,[1] appellant's request for a second psychiatric expert; and (2) whether the trial court should have declared a mistrial when a member of the Commission on Mental Health testified as to reexaminations of appellant conducted after the statutorily prescribed examination (D.C.Code § 21–542(a) (1981)) and without notice to appellant's counsel. Finding no error, we affirm.

---

1. As noted *infra,* at trial, the court finally acceded to counsel's motion for the services of the second psychiatric expert and authorized payment.

## I

The facts pertinent to this appeal are that the trial court[2] found appellant incompetent to stand trial on charges of petit larceny and a violation of the bail laws (for failure to appear on the petit larceny charge). It was therefore ordered that the government initiate civil commitment proceedings. D.C.Code § 21–541 (1981). On June 20, 1979, a petition was filed with the court. Pursuant thereto, the Mental Health Commission[3] conducted a hearing, taking the testimony of appellant's treating psychiatrist and appellant herself. Thereafter, the Commission found that appellant was mentally ill and likely to pose a danger to herself or others. D.C.Code § 21–545(b) (1981). On August 8, 1979, a report containing the Commission's findings and the recommendation that appellant be committed for an indeterminate period to St. Elizabeths Hospital was submitted to the court.

On August 28, 1979, in an *ex parte* hearing, appellant's attorney asked the trial court to authorize payment for two psychiatric experts.[4] The court granted the motion with respect to a Dr. Ratner. However, the court denied authorization for the services of a Dr. Rappaport. As reasons, the court stated, *inter alia,* that one expert was adequate, that the cost of Dr. Rappaport's services was excessive, and that counsel could submit a written statement of the

doctor's anticipated testimony, in the form of a stipulation, for the jury.

On October 31, 1979, the day before the trial, appellant's counsel again sought authorization for payment for Dr. Rappaport's services. The trial court denied counsel's request,[5] noting that counsel sought only to introduce the doctor's theory of dangerousness,[6] and *not* testimony based upon a personal examination of appellant. The court did however propose several alternative methods for getting the doctor's theory before the jury.[7] Appellant's counsel made no objection.

## II

At trial, Dr. Legler, one of the psychiatric experts for the Mental Health Commission, testified for the petitioner as to his own diagnosis of appellant. In addition to his observation of appellant during the statutorily prescribed Commission examination, Dr. Legler related that he had visited appellant on two other occasions prior to trial. He testified that he had also spoken with appellant's mother and examined appellant's complete hospital records.

At the conclusion of Dr. Legler's testimony on direct examination, appellant's counsel moved for a mistrial urging that Dr. Legler, by interviewing appellant after the Commission hearing, had exceeded his statutory authority and violated appellant's statutory and constitutional right to the effective assistance of counsel.[8] The trial

2. The Honorable Joseph M. Hannon presided over the criminal proceedings.

3. *See* D.C.Code § 21–502 (1981).

4. *See* D.C.Code § 11–2605(a) (1981), which states:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court shall authorize counsel to obtain the services.

5. The Honorable James A. Washington heard this motion and held that Judge Nunzio's ruling upon the earlier *ex parte* motion was the law of

the case. Nevertheless, Judge Washington chose to review the matter on the merits.

6. Dr. Rappaport's theory is that psychiatrists are not especially qualified to predict dangerousness.

7. The court suggested that it would instruct the jury as to the controversy surrounding a psychiatrist's capacity to predict dangerousness; that appellant could introduce Dr. Rappaport's written work; and/or that the parties could stipulate to the written work of the doctor and that of a third expert, Dr. Russell Monroe.

8. Appellant also argued that she had thereby been forced to testify against herself violating her Fifth Amendment protection against self-incrimination.

court took the matter under advisement, and invited counsel to submit a memorandum in support of his argument. Counsel chose instead to first cross-examine the doctor and then voir dire him on the follow-up examinations. Based on this testimony, counsel again moved for a mistrial. The motion was denied.

## III

Appellant claims that the trial court's failure to authorize payment for a second psychiatric expert, until the day of trial, was an abuse of discretion and unfairly prejudiced appellant's defense at trial. We disagree.

A respondent in a civil commitment case is certainly entitled to the services of a psychiatric expert upon a showing of financial inability to obtain the expert and a demonstration that the service is "necessary to an adequate defense." *See* D.C.Code § 11–2605(a) (1981). Deference must be given to the judgment of counsel, but this does not prevent the trial court from exercising its discretion. Moreover, the court appropriately denies a request for expert services when the respondent has received adequate psychiatric assistance from other sources. *See Dobson v. United States,* 426 A.2d 361, 368 (D.C.1981).

Here, during the requisite pretrial hearing, counsel for respondent sought authorization for *two* psychiatric experts. After some discussion on the motion, the trial court authorized payment for one expert, but refused to authorize payment for Dr. Rappaport whom counsel acknowledged would cost more than the $300 statutory ceiling. D.C.Code § 11–2605(c) (1981). Neither counsel's oral argument nor his memorandum in support thereof provided compelling justification for the second expert. Further, counsel sought to introduce Dr. Rappaport's theory of dangerousness and not his personal observation of appellant. Therefore, the trial court's suggested alternative of presenting the doctor's anticipated testimony in the form of a stipulation at trial protected appellant's interest. In any event, the trial court ultimately granted appellant's mid-trial motion to authorize payment for expert testimony on Dr. Rappaport's theory. Appellant chose not to avail herself of this opportunity. We can find no abuse of discretion or prejudicial impairment of appellant's defense in the trial court's treatment of appellant's request.[9]

Appellant's second assertion is that the trial court erred in denying her motion for mistrial. She argues that permitting Dr. Legler to testify as to his *post hearing* examinations of appellant violated her rights under the Ervin Act.[10] *See* D.C.Code §§ 21–501 *et seq.* (1981). Further, she asserts that the lack of notice to her counsel about the reexaminations deprived her of the effective assistance of counsel and her Fifth Amendment protection against self-incrimination.[11]

Appellant urges that Dr. Legler exceeded his statutory authority as a Commission psychiatrist by conducting the post-hearing examinations. We disagree. The central issue in a civil commitment trial is whether the respondent is *presently* dangerous to herself or others. To limit Commission psychiatrists, upon whom in part this determination rests, to the brief and insubstantial observation presented in the formal Commission hearing would be to prohibit

9. It is to be noted that appellant, nevertheless, through counsel's argument and the reading into the record of Dr. Rappaport's work on the subject, did put her theory before the jury.

10. The Ervin Act is the District of Columbia's civil commitment statute.

11. We think that *White v. United States,* 451 A.2d 848 (D.C.1982), is dispositive of the notice argument. First, "a defendant [respondent] has no Sixth Amendment right to the presence of counsel at a pretrial psychiatric examination." *Id.* at 854. Second, the protection of the Fifth Amendment does not extend to the sanity determination in a civil commitment trial. *Id.* at 852. *Cf. United States v. Whitlock,* 214 U.S.App.D.C. 151, 164, 663 F.2d 1094, 1107 (1980).

them from fulfilling their statutory duty. *See* D.C.Code § 21–503(a) (1981). In fact, we do not believe that Dr. Legler violated respondent's rights, but rather he sought to assure their fulfillment.

*Affirmed.*

FERREN, Associate Judge, concurring in part and dissenting in part:

I agree with my colleagues that the trial court did not abuse its discretion in denying, before trial, appellant's request for appointment of a second psychiatric expert. But I respectfully dissent from the proposition that, in order to prepare for the civil commitment trial, Dr. Glen Legler, a Mental Health Commission psychiatrist, could twice examine appellant after the Commission hearing and report prescribed by statute, D.C.Code §§ 21–542(a), –544 (1981), without advance notice to appellant's counsel.

### I.

After the court found appellant incompetent to stand trial, D.C.Code § 24–301(a) (1981), the United States Attorney filed a petition on June 20, 1979 for her civil commitment, alleging by reference to a certificate of her treating physician at St. Elizabeths Hospital, Dr. Richard McIlroy, that she was "mentally ill and because of such illness is likely to injure herself or others if allowed to remain at liberty." See D.C.

Code § 21–541(a) (1981). On the same day, the court ordered appellant to appear before the Commission on Mental Health (Commission) on July 12 for an examination and hearing [1] and appointed counsel to represent her.[2]

The proceeding before the Commission was continued until August 2. Before the hearing, Dr. Legler, a psychiatrist-member of the Commission "conducted a preliminary mental health examination" of appellant, after which a Commission panel, composed of James Gardiner, Esq., Gary Singleton, M.D., and Dr. Legler, conducted a psychiatric examination and hearing. D.C. Code § 21–542(a) (1981); note 1 *supra.* After hearing the testimony of the treating psychiatrist, Dr. McIlroy, and of appellant herself, the Commission concluded "[u]pon consideration of the preliminary examination [by Dr. Legler], the medical record, the demeanor of the patient, and the testimony taken at the hearing . . . that the patient is suffering from schizophrenia, chronic Undifferentiated Type and is likely to injure herself and others if allowed to remain at liberty." The Commission filed its report with the court on August 8, recommending that appellant be hospitalized at St. Elizabeths "for an indeterminate period." [3]

Counsel for appellant demanded a jury trial, which the court initially scheduled for September 10.[4] For various reasons the

1. The Commission is required to "promptly examine" the respondent and then "promptly hold a hearing on the issue of his mental illness." D.C.Code § 21–542(a) (1981).

2. The respondent "shall be represented by counsel in any proceeding before the Commission or the court, and if he fails or refuses to obtain counsel, the court shall appoint counsel to represent him." D.C.Code § 21–543 (1981).

3. If, after the hearing, the Commission decides by majority vote that the respondent "is mentally ill, and because of the illness is likely to injure himself or other persons if allowed to remain at liberty," D.C.Code § 21–544 (1981), the Commission shall so notify the court within five days after the hearing and submit at that time a written report containing findings of fact, conclusions, recommendations for disposition, and the name of any Commission member

who dissented. Super.Ct.Ment.H.R. 3(b). The Commission must serve the respondent and his or her counsel with a copy of the report and with notice of the right to a jury trial. D.C. Code § 21–544 (1981); Super.Ct.Ment.H.R. 3(b)(3).

4. The court is to set the matter for hearing "promptly," D.C.Code § 21–545 (1981), *i.e.,* "as soon as practicable after the Commission hearing." Super.Ct.Ment.H.R. 4(b). If the respondent requests a jury, the period of time between the Commission hearing and trial is likely to be longer than if the respondent requests a bench trial, but the rules reflect an emphasis in either case on expediting the matter: "the Court shall set [a jury] trial at the earliest practicable date." *Id.* 4(d). In sum, "the very core of the [Ervin] Act is an explicit and expedited timetable, at the conclusion of which the

trial was rescheduled five times, beginning, finally, on October 31, 1979. During Dr. Legler's testimony, he disclosed for the first time that, subsequent to the statutory submisson of the Commission's findings to the court and without notice to appellant's counsel, he had examined appellant on two additional occasions. Both examinations had taken place at the hospital while appellant was under the influence of medication. Dr. Legler testified that during these visits he also had studied appellant's entire medical record and discussed appellant's condition with Dr. McIlroy. (He also interviewed appellant's mother, a witness for the defense.)

Dr. Legler's trial testimony concerning appellant's condition was based on all these sources. He testified that, because of the postponement of the trial, he had undertaken these ex parte examinations, with the permission of the United States Attorney, to bolster his testimony and to determine whether the findings of the Commission were still valid. Dr. Legler further testified that after the ex parte examinations his opinion of appellant's mental condition remained the same as that detailed in the Commission's report.

Appellant's counsel moved for a mistrial on the ground that, in conducting the ex parte examinations, Dr. Legler had exceeded his statutory authority and, in doing so, had violated appellant's Fifth and Sixth Amendment rights. Counsel further asserted that appellant had been denied her right to effective assistance of counsel because counsel had not been notified of the ex parte examinations.

The court denied this motion, ruling that the ex parte examinations were within Dr. Legler's statutory authority, and that appellant had no right to counsel at a psychiatric examination. The court further noted that, even if appellant's counsel had a right to notice of the examinations, his failure to receive notice was harmless because counsel

patient is either released or committed." *In re Lomax,* 386 A.2d 1185, 1188 (D.C.1978) (en

not only lacked the right to be present but also could have "use[d] discovery to ascertain what went on."

On November 21, 1979, the jury found appellant mentally ill and dangerous to herself or to others. The court ordered appellant to remain at St. Elizabeths Hospital for treatment.

## II.

Ordinarily, when the process from petition to Commission hearing to court trial is expedited, as the statute requires, the Commission hearing record and report incorporate the results of all psychiatric examinations that have taken place, and the Commission member who testifies at trial bases his or her testimony solely on that record. This case is different. Because of the time lag between the Commission hearing and the trial, Dr. Legler found it desirable if not necessary to update the Commission report with two psychiatric interviews of appellant, an examination of her hospital records, and an interview with her mother, in order to be in the best possible position to testify at trial as to whether respondent was "*presently* dangerous to herself or others." *Ante* at 692. I have no quarrel with his doing so; it obviously is in everyone's interest. There is, however, a significant question whether counsel must receive notice of every such examination, either before it takes place or at least before trial.

## A.

There is a compelling reason for pretrial notice. When all psychiatric examinations (other than for treatment) are incorporated into the Commission report and record—as in the normal, expedited situation contemplated by the Ervin Act—counsel will be in a position to cross-examine the testifying psychiatrists at trial on the basis of their previously disclosed diagnoses. But if members of the Commission conduct follow-

banc).

up examinations after the Commission record has been closed, counsel will not necessarily know what the psychiatric testimony at trial will be and thus will not necessarily have had an opportunity to prepare adequately for trial.

I say not "necessarily" because, of course, there is the possibility that respondent will inform counsel about follow-up examinations before trial, or counsel may learn about them through use of pretrial discovery, with the result that counsel can interview the psychiatrist before trial. Counsel in this case, however, did not learn about Dr. Legler's examinations through either channel. Given the statutory right to counsel—including counsel's right to receive the Commission report (see note 3 *supra*)—it is a violation of the statutory scheme to put the burden on counsel to find out about every examination that is, in effect, a post-hearing amendment to that report.[5]

The reason for pretrial notice is well illustrated in an analogous, criminal context. The case of *United States v. Henry,* 174 U.S.App.D.C. 88, 528 F.2d 661 (1976), concerned the government's failure to notify counsel about a pretrial mental examination in connection with a prosecution on a number of narcotics charges. Defense counsel was unaware until he arrived in court on the day of trial that a defense motion requesting that his client be committed for a mental examination to determine competency to stand trial, D.C.Code § 24–301(a) (1973), had led to court-ordered examinations by three different psychiatrists.

Counsel objected, claiming that the lack of notice had deprived him of an opportunity to challenge the doctor's findings and to prepare an insanity defense. He maintained that an in-court examination of the doctors would not be a sufficient substitute for pretrial time to prepare the defense. The court agreed, holding that this lack of notice was not harmless error: "[w]hen the complaint is that appellant was deprived of his rightful opportunity to prepare a defense, the Government cannot take comfort from the fact that no defense was prepared." *Id.* at 93, 528 F.2d at 666. Furthermore, in a footnote the court stressed the "difficulty of dealing with psychiatric testimony without prior research." *Id.* at 92 n. 16, 528 F.2d at 665 n. 16.

Although *Henry* concerned lack of notice for a competency determination, the principle is applicable here. Dr. Legler's ex parte examinations were essentially court-ordered. As a member of the Commission, Dr. Legler was compelled by law to give competent testimony at trial, D.C.Code § 21–545(b) (1981), and he conducted the follow-up examinations for the purpose of fulfilling that legal obligation. Without notice of these ex parte psychiatric examinations, counsel for appellant, as in *Henry,* was not in a position to prepare adequately for trial.[6]

### B.

There is, finally, the question whether counsel is entitled to notice before the follow-up examinations take place, or only

---

5. At trial, Dr. Legler testified both as a representative of the Commission and as an expert witness. He expressed the opinion of the Commission, based on his own "preliminary interview," the "diagnosis" in the report, and the record of the hearing, as well as his opinion of appellant's mental condition based on the hearing and his "subsequent interviews" with her. Thus, despite the fact that the Commission legally performed only "a preliminary screening function," *In re Holmes,* 422 A.2d 969, 971 (D.C.1980), as far as the jury could tell, all of Dr. Legler's psychiatric examinations of appellant were part of that function and thus part of the Commission's official recommendation.

6. D.C.Code § 21–543 (1981) provides, in part: "The Commission or the court, as the case may be, shall, at the request of the counsel so appointed, grant a recess in the proceeding to give the counsel an opportunity to prepare his case. A recess may not be granted for more than five days." In moving for a mistrial once he learned about Dr. Legler's follow-up examinations, counsel in effect invoked this provision. The court abused its discretion in not granting counsel time to prepare the case on the basis of this critical, new information.

thereafter but before trial. I agree with my colleagues that, as in criminal prosecutions, a respondent is not entitled under the Ervin Act to have counsel present during a prehearing psychiatric examination conducted for purposes of developing the Commission report. *In re Holmes*, 422 A.2d 969, 972–73 (D.C.1980) (respondent in civil commitment proceeding not entitled to assistance of counsel at psychiatric examination by Commission psychiatrists before hearing); *cf. White v. United States*, 451 A.2d 848, 854 (D.C.1982) (defendant "has no Sixth Amendment right to the presence of counsel at a pretrial psychiatric examination"). However, just as counsel in a criminal proceeding must be "informed prior to the court-ordered examination of its purpose so that appropriate advice may be given," *White, supra*, 451 A.2d at 855; *accord Henry, supra*, 174 U.S.App.D.C. at 93, 528 F.2d at 666, I believe that § 21–543 (note 2 *supra*) should be read to require notice in advance of every non-therapeutic psychiatric examination conducted under the Ervin Act, whether it be an examination in connection with preparing for the Commission hearing[7] or, thereafter, as a follow-up. Thus, even if discovery could be expected to yield information about follow-up examinations, after the fact, such discovery would not cure the lack of advance notice, which deprived counsel of the opportunity to give respondent "appropriate advice" about what to anticipate, or to question the appropriateness of the timing of the examination. (In this case, for example, appellant was medicated at the time of both examinations, and counsel might have sought an explanation from Dr. Legler as to how this could affect the interview.)

### III.

In sum, based on the reasoning of *Henry, supra*, and *White, supra*—which is equally

applicable to a civil commitment proceeding where liberty is at stake—I conclude that the trial court erred in declining to grant respondent's motion for a mistrial when counsel informed the court that he had not received advance notice of Dr. Legler's follow-up examinations. The United States Attorney's office had a responsibility to inform respondent's counsel about Dr. Legler's intention, in effect, to amend the Commission report before trial.

---

7. While we held in *In re Holmes, supra*, that the pre-hearing psychiatric examination by Commission members was not a "proceeding" within the meaning of § 21–543 entitling respondent to assistance of counsel, we were speaking solely to the question whether respondent was entitled to have counsel present at the examination. We noted "that counsel was present at the time, but did not attend the actual examination." 422 A.2d at 973 n. 12. There was no issue of the right to notice of the examination. Similarly, in this case, counsel does not claim he failed to receive notice of Dr. Legler's pre-hearing examination of appellant.